## SLICKER v SECCOMBE

Ohio Appeals, 5th Dist, Stark Co

Decided Oct 22, 1931

508

Abt, Van Nostran & Graham, Canton, for plaintiff in error.

Black, McCuskey, Ruff & Souers, Canton, for defendant in error.

SHERICK, PJ.

At the conclusion of the plaintiff's opening statement, the defendant moved for judgment on the pleadings and opening statement. This motion the court overruled. Of this ruling the defendant now complains. The ground advanced for the sustaining of this motion was that the plaintiff could only recover upon averment and proof of a wilful and wanton tort on the part of the defendant. This motion was properly overruled, for the reason that the averment of the defendant's answer, that the plaintiff's wife was guilty of negligence per se in riding on the running board of the car, which was forbidden by a valid and subsisting city ordinance, had been generally denied by the reply. It was hence at this point not an admitted fact.

Plaintiff's counsel seems quickly to have perceived the deadfall ahead, and promptly asked for and obtained leave to file an amended petition. The amendment as made consisted of the injectment throughout the petition of the words "wanton and wilful," as applied to the claimed negligent acts of the defendant. An amended answer was thereafter filed, meeting the new issue raised, and the cause proceeded to trial after the court had overruled a similar motion directed to the amended petition. In this we see no error, for the reason that the reply generally denied the averments of the amended answer.

At the conclusion of the plaintiff's case and at the end of all the evidence, the defendant moved for an instructed verdict for the reason that the plaintiff's wife and her sister, the driver of the car, were guilty of uncontradicted and undisputed acts of negligence, and particularly for the reason that there was an entire absence of testimony or evidence tending to show wilful negligence on the part of the defendant at and prior to the time of the accident. These motions were overruled, and no doubt rightly so, as will hereinafter be developed in a consideration of the further claimed error in the court's refusal to grant a new trial, for the reason that the verdict was against the manifest weight of the evidence.

It is disclosed that Tuscarawas street west, upon which all parties were proceeding west, is forty-six feet in width from curb to curb, upon which are located double street car tracks; that Claremont avenue is forty feet in width from lot line to lot line, and begins at Tuscarawas street and runs north. The angle of the two streets is less than a right angle. It is also evidenced that an alley leads south from Tuscarawas street, at a point opposite or very near the mouth of Claremont street.

Both cars were proceeding west at a speed of around twenty to twenty-five miles per hour, that of the defendant following the car upon which the plaintiff's wife was riding, and about twenty-five feet back therefrom. The traffic was very heavy. As they neared Claremont avenue, the sister of the plaintiff's wife, who had been driving near the line of cars parked along the street, pulled towards the street car tracks in the center of the street and slowed down. She gave no warning of her intention of making a turn, other than, as she says, that she raised her hand inside the car, a Ford coupe, in which three were riding, the plaintiff's wife being on the right running board. This signal the defendant says he did not see. It also appears that some ribbons were fastened to the curtain at the top of the glass in the rear of the Ford, and that these were fluttering, and they, no doubt, partially obscured any signal given inside the car.

The defendant says that he assumed that the Ford car was about to make a left-hand turn, and it is shown that he proceeded forward in the lane of travel, at the same rate of speed, and that, while he was about abreast of it, at about the street intersection, the Ford car turned to the right; that he then increased his speed and turned his car north and ran up over the curb, sidewalk and lawn, to avoid hitting the Ford car, but that the right front hub cap of the Ford car came in contact with the front left side of his car. Very little damage was sustained by either car. The plaintiff's wife, however, was jolted off and injured, but was not hit by the defendant's car. The defendant admits that he saw the plaintiff's wife on the running board all the way up the street.

The main point of difference in all this evidence is that the plaintiff maintains that the Ford car did not bear to the left, as defendant contends. The plaintiff's wife has no knowledge as to how the accident happened. The two sisters of the plaintiff's wife and their mother say that the Ford car did not bear to the left. On the other hand, the defendant and five others assert the contrary. One Dr. Bowman, following these two cars, and called by the plaintiff as his wife's first medical aid and witness, is not clear in his statement and throws no light on this disputed point.

A young man by the name of Kanaga, called by the plaintiff, says that he was across Tuscarawas street, and that, when he first saw the cars, the defendant's car was obscured by the Ford, and they were about abreast. The mother-in-law's testimony is important. She testifies that the Ford car had been driven out Tuscarawas street near the curb, and just enough away therefrom to miss the line of cars parked along the curb on the north side, but it is significant that she states that, had both cars gone straight ahead at the time, there would have been no accident. This, to our notion, lends credence to the defendant's claim that the Ford car had borne to the left, and it follows that the right turn attempted to be made, due perhaps to the Ford's crowded interior, and lack of freedom that restricted its driver, was, to use the language of the street, rather a roundhouse turn; and the bearing to the left indicated that a turn was to be made to the left, which was in itself an invitation to following traffic to continue in its lane or course uninterrupted.

It is obvious that the plaintiff's wife was guilty of negligence in riding upon the running board, contrary to the city ordinance. It is admitted that neither the driver of the Ford nor any of its other occupants signaled outside of the car an intention to slow down, stop, or turn, as provided by §6310-22, GC. A signal on the inside of the car, when not seen by those following, is not such warning as is contemplated by this section of the Code. We think the statute contemplated an effective warning, and to such it was intended to be made outside of a car, so that all may see, and not made just for the occupants of any vehicle immediately behind it. In this the plaintiff's wife and the driver of the Ford were negligent.

It is provided in the rules of traffic, §6310-23, GC, that vehicles "turning to the right into another road or highway shall turn the corner as near to the right side of the road as possible."

This section of the statutes is not invoked by the defendant, but we have no doubt that he and the occupants of the Ford car knew of this rule. Now the Ford car was not turned in this fashion, and in that there was a dereliction of a statutory duty.

It is therefore apparent that from these proven and admitted facts the plaintiff's wife and her sister, the driver of the car, were negligent. That being true, it devolved upon the plaintiff to prove two things: First, that the defendant was negligent in some one particular; and, second, that in such act or omission he had perpetrated a wilful and wanton tort.

It is urged that the defendant violated a state law when he attempted to pass the Ford coupe on its right side, and that he violated a state law and ordinance when he attempted to pass at an intersection. There can be no question that, had the Ford coupe not stopped or slowed down, but had proceeded forward, the defendant would have been guilty of violating these laws, but outside the city of Cleveland and vicinity we believe it is common practice, and the rule of traffic throughout Ohio, for vehicles desiring to turn to the left to seek the center of the street or highway so that traffic may proceed uninterruptedly and to the right of the vehicle about to make such turn. We therefore have grave doubt and are inclined to the view that the defendant did not intend to and did not violate these laws, as he is charged. He assumed, as he had a right to assume, from the act and omission of the occupants of the Ford car, that it was to be turned to the left. We do not wish to be misunderstood to the effect that these sections might not be violated in this manner, for we can conceive of situations to the contrary, but not so in the present instance.

However, if we are in error on this point, or had reached the conclusion that the defendant was guilty of a violation of these laws, our ultimate conclusion in this matter would be the same. We therefore purpose to further discuss this feature of the case— the plaintiff's insistence upon the fact that the defendant saw the plaintiff's wife in a position of danger, that is, on the running board of the car, and hence was liable because he wantonly and wilfully disobeyed the law and thereby purposely injured her, as he was bound to know that his act was liable to cause her injury.

It is held in **Payne, Director General, v Vance, 103 Oh St, 59, at page 68, 133 NE 85,** 88, that: "The violation of a statute does not constitute a willful wrong."

This being true, it is apparent that, if the defendant did violate these laws, that of itself was not wilful or wanton, but we recognize that it might be some evidence which, along with other evidence, might make proof of a wanton or wilful tort. The same may be said to be true with reference to the defendant's knowledge of the dangerous situation of the plaintiff's wife, and we must therefore conclude at this point that these facts afforded some evidence of the plaintiff's claim, if no more than a mere scintilla. It entitled the case to go to the jury, under the rule of this state, and it therefore must follow that the defendant's motions for a directed verdict were properly overruled; but it does not further follow that the motion for a new trial should have been overruled.

In the recent case of Iaconio v D'Angelo, 104 N. J. Law, 506, 142 A. 46, 47, 58 A. L. R. 614, wherein both the chancery and law court sat in banc, the sixteen judges and chancellors thereof unanimously determined how wilful or wanton injury could be established. It was said:

"Wilful or wanton injury can only be established by showing that one, with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result."

This was a case in which a small boy was pushed off a rapidly moving car. We quickly see under that state of facts that all of the elements prescribed in the rule are present. Now, if we attempt to apply this rule to the admitted facts in this case, we find facts that are wanting.

Our Supreme Court in the Vance case, supra, approves of almost this exact statement, on page 68, and further the court remarks, at page 69, of 103 Oh St, 133 NE 85, 88:

"A wilful injury will not be inferred when the result may be reasonably attributed to negligence or inattention," and "A defendant might be guilty of the grossest negligence and his acts might be fraught with the direst consequences without having those elements of intent and purpose necessary to constitute wilful tort."

It seems very clear to us that our court fully appreciated the grave danger of any

lessening of what must be established to prove wilful or wanton injury, knowing full well that such a lessening might provoke its frequent invocation in the ordinary case of an automobile collision, like the present one, and thereby destroy the well-established Ohio doctrine of contributory negligence.

The Vance case, has been since considered and its principle reaffirmed in **Union Gas & Electric Co. v Crouch**, 123. Oh St 81, at page 85, 174 NE 6, 74 A. L. R. 160. The case of **Higbee Co. v Jackson**, 101 Oh St 75, at page 87, 128 NE 61, 14 A. L. R. 131, is also in point.

It is said in Bremer v Lake Erie & W. R. Co., 318 Ill. 11, 148 NE 862, 866, 41 A. L. R. 1345:

"What degree of negligence the law considers equivalent to a wilful or wanton act is as hard to define as negligence itself, and, in the nature of things, is so dependent upon the particular circumstances of each case as not to be susceptible of general statement. The gross negligence which will justify the presumption of wilfulness or wantonness is such as to imply a disregard of consequences or a willingness to inflict injury."

We believe the statement of Blashfield, taken from his Cyclopedia of Automobile Law, volume 2, page 1264, is worthy of quotation:

"A wrongdoer is guilty of gross negligence or acts wantonly and wilfully only when he inflicts injury intentionally or so utterly indifferent to the rights of others that he acts as if such rights did not exist; and a person charged with wanton negligence ordinarily cannot be found guilty thereof, if, after discovering the danger of another seeking to recover on account of such negligence, he uses all reasonable means within his power to avert the catastrophe."

Now, applying these sound principles to the situation developed in this controversy, and keeping in mind the warranted assumption of the defendant that the Ford car was about to make a left-hand turn, wherefor he proceeded on in his course and was only advised of the grave danger of the plaintiff's wife when the Ford car was made to turn to the right and towards him while in his efforts to escape collision, we are unable to find in the proof offered the establishment of those elements that are necessary in a wilful and wanton tort. The position in which the plaintiff's wife rested on the running board of the car was not of itself the dangerous element, but the real and certain danger presented itself when the Ford car was turned to the right, and this danger the defendant sought by the exercise of almost instantaneous judgment to avoid.

We are almost constrained to feel, under the facts in this case, that, if the defendant was guilty of wanton and wilful conduct, the plaintiff's wife and the driver of the Ford car were likewise as equally reprehensible, and that the rule stated in Hinkle v Minneapolis, A. & C. R. Ry. Co., 162 Minn. 112, 202 NW 340, 41 A. L. R. 1377, would be applicable, that is, that where each is guilty of wilful and wanton conduct there can be no recovery, for in the case at bar the plaintiff's wife well knew that her sister was going to turn right at the intersection.

Holding as we do, we find it unnecessary for us to consider any claimed error in the court's charge.

It is therefore our conclusion from the facts and circumstances developed in this case, and all reasonable inferences that may be drawn therefrom, that the verdict of the jury is against the manifest weight of the evidence, and that the court should have sustained the defendant's motion for a new trial. The scintilla of evidence undoubtedly warranted the submission of the cause to the jury, but that rule cannot be the measuring stick on the motion for a new trial.

The judgment will therefore be reversed.

LEMERT and MONTGOMERY, JJ, concur.