## HANKEY BAKING CO v SHEEN

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 7, 1936

Manchester. Ford, Bennett & Powers, Youngstown, for plaintiff in error.

Edward L. Williams, Youngstown, for defendant in error.

## OPINION

By NICHOLS, J.

James K. Sheen, plaintiff, brought his action in the Common Pleas Court of Mahoning County, Ohio, against Hankey Baking Company, defendant, for personal injuries received on the 3rd day of January, 1934, at about 10 o'clock A. M., while he was operating an automobile in a westerly

direction upon one of the much traveled public highways in Mahoning County. Running south from the public highway was a certain lane or road, leading to a coal mine where Sheen worked as a coal miner. As he approached the coal road or lane leading south, he turned his automobile to the left for the purpose of entering the coal lane or road, and as he did so a truck owned by Hankey Baking Company, operated by its agent in the course of its business, struck the automobile operated by Sheen, and as a result of the collision Sheen received a broken arm and other claimed injuries.

The action was tried to the court and a jury in Mahoning County, resulting in a verdict for plaintiff and against the defendant in the sum of $10,000. Motion for new trial was overruled and judgment entered on the verdict. Error is prosecuted to this court by Hankey Baking Company. The parties will be referred to herein as they appeared in the court below.

Without waiving any of the twenty grounds of error set forth in the petition in error, the following specific grounds are urged in brief and oral argument of plaintiff in error, by reason of which it is claimed not only that the judgment of the trial court should be reversed, but that final judgment should be entered by this court in favor of the defendant below, as follows:

(1) The verdict and judgment are contrary to law.

(2) The court erred in failing to direct a verdict for defendant at the close of plaintiff's evidence and at the close of all the evidence.

(3) The verdict and judgment are against the manifest weight of the evidence.

(4) The court erred in its general charge to the jury in charging both wilful tort and wanton negligence.

To a proper determination of the questions involved we must first look to the allegations of plaintiff's petition for the claimed basis of liability upon the part of the defendant below. From the petition we quote the pertinent portions thereof, as follows:

"Plaintiff says that the defendant through its agent was guilty of certain wanton negligent acts in the operation of its truck, to-wit:

"First: In operating its automobile truck at a high, dangerous and unlawful rate of speed, to-wit, sixty miles per hour.

"Second: In failing and neglecting to slow down or impede the progress of its automobile truck in sufficient time to avoid running into and colliding with the automobile which plaintiff was operating, although in the exercise of ordinary care on their part they could have done so.

"Third: In failing and neglecting to keep a lookout ahead of the automobile truck so as to see and observe the movement of the vehicle which plaintiff was operating in sufficient time to avoid running into and colliding with the same, although in the exercise of ordinary care they could have done so.

"Fourth: In failing and neglecting to keep a lookout to see and observe signals or warnings given by plaintiff.

"Fifth: In causing, allowing and permitting its automobile truck to be operated on the left or wrong side of said highway at said time and place.

"Sixth: In wantonly and recklessly causing, allowing and permitting its automobile truck to leave the highway on which the same was being operated, and go into a driveway hereinabove referred to, and strike the automobile which plaintiff was operating.

"Each and all of which wanton, careless, negligent and unlawful acts aforesaid were the direct and proximate cause of said collision and resulting damage to plaintiff."

For its answer to the petition of plaintiff the defendant admitted the occurrence of the collision, but set forth that it did not occur in the manner alleged by the plaintiff, and defendant denied generally each and every allegation of the petition as to the negligence of the defendant. For its second defense the defendant alleged that the collision was the direct and proximate result of negligence on the part of the plaintiff in the following respects:

"1. Plaintiff turned and changed the course of his automobile without making sure that such movement could be made in safety.

"2. Plaintiff turned and changed the course of his automobile without giving notice of his intention so to do visible outside of said vehicle.

"3. Plaintiff then and there operated and directed the course of his automobile without paying due attention or giving heed to the presence and position of defendant's motor truck then and there lawfully on said highway.

"4. Plaintiff turned his automobile to the left and directly into the path of defendant's motor truck when he knew, or

in the exercise of due care, should have known that said motor truck was to the left of the plaintiff and was in the act of passing the plaintiff.

"5. Plaintiff then and there operated his said automobile at a speed greater than reasonable and proper with reference to the width and condition of the highway and the traffic thereon.

"Defendant further says that if it should transpire that defendant was in any wise guilty of negligence in the premises, which this defendant expressly denies, then plaintiff himself was likewise guilty of negligence in the several respects hereinbefore set forth, directly and proximately contributing to cause and bring about the alleged injuries of which plaintiff complains."

Upon careful examination of the original papers, the transcript of the docket and journal entries, we fail to find any reply on behalf of the plaintiff denying the contributory negligence upon the part of the plaintiff as set up in the answer of the defendant. From an examination of the record in this case we find that on the morning of the 3rd day of January, 1934, both the automobile operated by plaintiff and the truck operated by defendant's agent were traveling in the same direction on a public highway as the same approached the entrance of a coal lane or road, the automobile of plaintiff being in front of the truck of the defendant.

The testimony is in conflict as to the rate of speed at which each of these motor vehicles was being operated, and is likewise in conflict as to the distance between the two automobiles at the time they came over the brow of a hill some 500 feet distant from the collision. Plaintiff and another occupant of the automobile which plaintiff was operating testify that plaintiff was proceeding at a rate of 10 to 15 miles per hour; that as he turned his automobile to the left to enter the coal lane or road he looked back through the mirror of his automobile, without stopping his motor vehicle, and, not seeing the truck of defendant, turned his automobile to the left without giving any signal of any kind outside of his automobile; and that he had partly entered the coal lane or road, leaving only the rear part of his car in the main traveled highway, when the same was struck by the truck.

It is the claim of plaintiff's counsel, first, that the plaintiff exercised due care under the circumstances and was relieved from giving any signal outside of his car of his intention to turn to the left by reason of the fact that defendant's truck was not in sight at the time plaintiff looked backward through his mirror, and that the giving of a signal under such circumstances would have been vain and useless, and that the accident was solely caused by reason of the speed at which defendant's agent drove the truck at the time and place, whereby it overtook plaintiff's car before the latter could get entirely clear of the traveled portion of the main highway.

There is testimony given by certain witnesses for plaintiff who saw defendant's truck a considerable distance east of the place of the accident, and these witnesses estimated its speed at 55 to 60 miles per hour. It is likewise the claim of the plaintiff that the driver of the truck did not blow his horn until too late for plaintiff to get his car entirely off the traveled portion of the main highway.

On the other hand the driver of the truck and certain other witnesses of the defendant testified that both the automobile of plaintiff and the truck of defendant were traveling at about 40 miles per hour, the truck being about 75 to 100 feet back of the automobile of plaintiff; and that for a distance of several hundred feet the driver of the truck was blowing his horn as a signal that he desired to pass plaintiff's automobile. The driver of the truck testified that as he blew his horn the plaintiff pulled over to the right, and, that he, the driver of the truck, believing plaintiff understood his horn signal to mean that defendant desired to pass, put on his gas and proceeded to pass plaintiff's car, at which time plaintiff turned his car suddenly to the left and directly in front of the truck, the truck striking the automobile of plaintiff in the center of the left side thereof, whereby the truck went to the left of plaintiff's automobile over a ditch into a field, upset, and burned, the car of the plaintiff landing partly in the ditch about 75 feet west of the coal lane or road.

Plaintiff, on cross-examination, testified as follows:

"Q. Now, before you started to make this turn, did you put your hand out the window? A. No.

Q. Did you give any kind of signal of your intention, what you were going to do? A. No.

Q. You just started to turn? A. Yes, sir. * * *

Q. All right, so the first time you saw the truck it was 300 feet back of you, not

50 or 100 feet, that is right, isn't it? A. It was in my judgment that way.

Q. You had then started to turn? A. Yes, sir.

Q. Did you stop at any time any place making this turn, or did you keep right on going? A. I kept right on going, yes, sir * * *

Q. While you were standing there, before you were taken away, did not the driver of the truck ask you this in substance, 'What possessed you to turn in front of me, or turn in without any warning? Did not he say that to you? A. Yes, sir.

Q. And your answer was 'I don't know. I thought I had time to make,' you told him that didn't you? A. No."

The driver of the truck testified that when he and the plaintiff were being taken to the hospital by John S. Weaver and Grace Weaver in the Weaver automobile, he, the driver of the truck, asked plaintiff what possessed him to turn in front of the truck without any warning, and the plaintiff answered that he still thought he had time. Miss Weaver who was called as a witness by plaintiff testified that she heard this conversation between the driver of the truck and the plaintiff.

As hereinbefore stated, it is first claimed by counsel for defendant in error that there was no duty upon the part of plaintiff to stop his car before turning to the left and entering the side road, and no duty upon plaintiff's part to give a signal visible outside the car indicating his intention to turn to the left into the side road for the reason that plaintiff did not see the truck of the defendant upon the occasion when plaintiff looked back for the purpose of seeing if there were any vehicles approaching from the rear. With this contention we can not agree in view of the code provisions following. §6310-22, GC, is as follows:

"Drivers of vehicles before turning, stopping or changing their course shall make sure such movement can be made in safety and shall cause signals to be made of their intention in a way visible outside the vehicle."

In our opinion the portion of §6310-22, GC, which provides that drivers of vehicles before turning, stopping or changing their course shall cause signals to be made of their intention in a way visible outside the

vehicle, is a positive requirement of law, the violation of which is negligence per se. Slicker v Seccombe, 42 Oh Ap 357, (12 Abs 507) 182 NE 131; Gumley, Admr. v Cowman, 129 Oh St 36, 193 NE 627; Skinner v Pennsylvania Rd. Co., 127 Oh St 69, 186 NE 722.

But, upon examination of the charge of the trial court, we find in the record the following inquiry by one of the jurors, together with the reply of the court relative to the requirements of §6310-22, GC:

"Juror: Judge, on the law you read just before that about the signals does the law say anything about signals providing if there is someone else on the road; does it go further on and say that it is not necessary to give signals when there is no one on the road, or must give signals at all times?

"Court: Well sir the statute, I read the statute as it is here and in its completed form. Of course the law never requires anyone to do a vain and useless thing. The purpose of the giving of a signal is to apprise another of your intention to do a certain act but you should remember the other portion of the statute that says before he does this act of turning, stopping or changing his course he must make sure that he can do so, and therefore the whole statute should be considered by this jury."

We find no authority for the court's modifying the provisions of §6310-22, GC, by the statement, "of course, the law never requires anyone to do a vain and useless thing." By this language we think the trial court very clearly told the jury that it might have been a vain and useless thing for the plaintiff to give a signal visible outside his car before turning and changing his course. The necessity for compliance with this statute could not more clearly be made apparent than by the fact of the collision in question. There is nothing in the statute which relieves the driver of an automobile from giving the signals required therein merely because he fails to see the approach of another automobile. Being a positive requirement of law, the violation of which is negligence per se, it necessarily follows that compliance with the law is not conditioned upon the judgment of a driver of a car about to turn to the left and change its course as to whether another car is so far away that the giving of a signal would be a vain and useless thing.

But, it is contended by counsel for de-

fendant in error that even though it be conceded that the plaintiff ▆▆▆▆▆▆ ▆ below was guilty of contributory negligence, nevertheless, the defendant below is deprived of the defense of contributory negligence because the defendant in the operation of its motor vehicle has been guilty of wanton negligence. The trial court charged the jury not only upon the subject of wilful misconduct, but also upon the subject of wanton negligence. An examination of the hereinbefore quoted portions of plaintiff's petition, wherein are alleged the grounds upon which plaintiff bases liability of the defendant, very clearly discloses that no acts are therein alleged which would give rise to a charge upon the subject of either wilful or wanton negligence.

It is true that at the close of the court's charge to the jury counsel for plaintiff below made the following suggestion, as shown by the record:

"Mr. Williams: I have a suggestion to make to the court, I noticed in your Honor's charge that you called to the attention of the jury a charge of wilful tort. I want to suggest to your Honor that my understanding of the Supreme Court's opinion that we were not charging an intention or wilful tort here but we contend a wanton negligent act, I would like to ask your Honor * * *

"Court: I will withdraw from the consideration of this jury the reference I made to wilful tort upon the request of counsel for the plaintiff. Anything further?

"Mr. Williams: Nothing further. * * *

"Mr. Williams: Before you discharge the jury since your Honor charged the jury with reference to wilful and wanton acts I would like to ask your Honor to say to the jury that remaining before them is only the wanton negligence of the defendant.

"Court: I think I have complied with such request—I have said all I want to upon that question."

It will be observed that the most claimed by counsel for plaintiff below was that the defendant was guilty of "wanton negligence."

In the case of **Universal Concrete Pipe Co. v Bassett, 130 Oh St 567, 200 NE 843,** the Supreme Court held:

"1. Mere negligence is not converted into wanton misconduct by the use of the word 'wanton' in connection with the specifications of negligence. If wanton misconduct is relied upon for recovery in an action for damages for personal injury, facts must be pleaded which reveal on their face the element of wantonness.

"2. Wanton misconduct is such conduct as manifests a disposition of perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. (**Higbee Co. v Jackson, 101 Oh St 75,** third paragraph of the syllabus, and **Reserve Trucking Co. v Fairchild, 128 Oh St 519,** second paragraph of the syllabus, modified).

"3. Regardless of the fact that the term 'wanton negligence' is sometimes used both in text and opinion, such use is unwarranted, as it is a misnomer, pure and simple. Wanton misconduct is positive in nature, while mere negligence is naturally negative.

"4. A party charged with wanton misconduct is deprived of his plea of contributory negligence.

"5. The parking of an unlighted truck for a few minutes on the proper side of a city street after dark on a misty, rainy night, two feet from the curb, if there was a curb, in order that the driver, who had lost his way, might cross the street and make inquiry, the lights of which truck were burning several miles away and several minutes before collision, while negligence, is not wanton misconduct, and the injection of the element of wanton misconduct into such case to the point that the trial court instructs the jury on such issue, constitutes prejudicial error and a judgment based thereon must be reversed."

We refer to the full report of the case of Universal Concrete Pipe Co. v Bassett, supra.

It is apparent to this court that there is no allegation in plaintiff's petition which avers, and no evidence which tends to prove, that the conduct of the driver of defendant's truck was such as manifested a disposition to perversity, or that his conduct under the surrounding circumstances and existing conditions was such that the driver of the truck was conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct would in all probability result in injury. Wilful misconduct not being claimed in

the petition, and the Supreme Court having held that the use of the term "wanton negligence" is unwarranted and is a misnomer, it appears that no allegation was made in plaintiff's petition which deprives defendant below of the defense of contributory negligence; and it also appearing to this court that reasonable minds could not differ, but must find the plaintiff below guilty of contributory negligence as a matter of law in failing to give a signal visible outside of his automobile, "before turning and changing his course," of his intention so to do. it necessarily follows that the motion of the defendant below for a directed verdict at the conclusion of plaintiff's case should have been sustained by the trial court, and that the trial court committed error prejudicial to the rights of the defendant below in failing to sustain such motion.

The judgment of the trial court must, therefore, be reversed, it appearing that substantial justice has not been done, and this court now coming to enter the judgment which should have been entered by the trial court upon the motion of defendant for directed verdict finds the issues in favor of defendant below.

Judgment reversed and final judgment for plaintiff in error.

ROBERTS and CARTER, JJ, concur.