**WEAVER v. MARK et al.**

**McCHESNEY v. SAME.**

Nos. 8281, 8282.

Circuit Court of Appeals, Sixth Circuit.

June 27, 1940.

Don J. Young, Jr, of Norwalk, Ohio (Wayne S. Hiltner, of Akron, Ohio, and Young & Young and Don J. Young, Jr., all of Norwalk, Ohio, on the brief), for appellants.

Luther Day, of Cleveland, Ohio (Pope & Ballard, of Chicago, Ill., and Jones, Day, Cockley & Reavis and Thomas F. Veach, all of Cleveland, Ohio, on the brief), for appellees.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

Appellants, Joseph C. Weaver and Dora McChesney (mother-in-law of Weaver), were passengers in an automobile driven by appellee Clayton Mark, Jr., and were injured when it overturned. They brought separate suits for damages growing out of the accident. The court sustained a demurrer to an amended petition in each case and dismissed the suits.

The appeals were heard together and one opinion will suffice.

The demurrers were identical and were in substance, (1) that the amended petitions did not state causes of action; and (2) that a misjoinder of parties appeared upon the faces thereof.

The material allegations in the petitions were identical. We cite those in the Weaver case, which we deem relevant, to wit:

That Weaver was riding in an automobile belonging to Clayton Mark, Jr., at the western limits of Monroeville, Ohio, on U. S. Route No. 20 when it overturned and Weaver was injured; that Clayton Mark, Jr., was purchasing agent for appellee Clayton Mark & Company; that the company through its agent was operating the car upon a trip from Toledo to Cleveland for the purpose of inspecting the plant of Weaver's employer; that Clayton Mark, Jr., as an individual and not as the agent of the Company, was interested in inspecting the plant and was traveling to Cleveland for that purpose; that the Company through its agent Clayton Mark, Jr., and Clayton Mark, Jr., individually were jointly engaged in operating the automobile; that Weaver was riding in the car at the request of both appellees for the purpose of taking the agent of the Company and the individual appellee, Clayton Mark, Jr., upon a trip and tour of inspection.

The petitions continue:

"that * * * U. S. Route No. 20 was a much travelled public highway, having a concrete surface and being about 20 feet in width; that said highway extends in an easterly and westerly direction; that at a point approximately at the western limits of said Village of Monroeville there is a sharp turn in said highway; that the defendants, operating said automobile as aforesaid at a point where said turn is located in said highway suddenly, violently, and with great force drove said automobile off of said highway, causing said auto-

mobile to upset and roll over and over, hurling plaintiff from said automobile, by reason of which plaintiff suffered certain injuries * * * as a * * * result of the wanton misconduct of the defendants in the following particulars, to wit:

"First: In that said defendants operated said automobile at a highly dangerous and excessive rate of speed, to wit, eighty miles per hour, so as to endanger life, limb and property in utter disregard of the safety of the plaintiff and others in the use of said highway.

"Second: In that said defendants failed to maintain control over the course and guidance of said automobile on said highway and attempted to make the turn in said road knowing that to make said turn when the automobile was not under control was highly dangerous to the safety of plaintiff.

"Third: In that said defendants continued to operate said automobile at a highly dangerous and excessive speed of eighty miles per hour over plaintiff's objection and protest, knowing that plaintiff requested said defendants to slacken the speed and stop said automobile to permit plaintiff to leave therefrom, and knowing that to continue at said speed was endangering the safety of the plaintiff.

"\*    \*    \*    \*    \*

"Eighth: That in going west through the City of Bellevue, seven or eight miles west of Monroeville, said automobile was operated at a rate of speed of sixty miles per hour or more, in spite of the continued objections of this plaintiff; that during the course of the trip the operator of said automobile, when warned that a train was crossing the road ahead declared that if it did not get out of the way, he would go through it; that after leaving the corporate limits of Bellevue the rate of speed of said automobile had been greatly increased with full knowledge on the part of the defendants; that the defendants knew that such conduct under all the circumstances then present, would probably result in injury to the plaintiff and that said conduct constituted wanton misconduct.

"Ninth: For that said defendants knowing that said automobile was being operated at a very high rate of speed and while the driver was under the influence of intoxicating liquor, knowingly and wantonly failed and refused to keep a lookout or to keep the same under control or to do anything to avoid turning the same over, although they were conscious of the great probability that harm would result to the plaintiff.

"Plaintiff further says that as a direct result of the wrongful acts aforesaid said automobile turned over and this plaintiff was thrown therefrom * * *" and received the injuries complained of.

■ Appellees insist, under the first ground of the demurrer, that the petitions allege that appellants were guests of the operator of the car as contemplated by Sec. 6308-6 of the Ohio General Code and that the petitions failed to allege facts disclosing wilful or wanton misconduct on the part of the operator. We quote Sec. 6308-6 in its entirety: *"Liability of owners and operators of motor vehicles to guests.—* The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the *wilful or wanton misconduct of such operator,* owner or person responsible for the operation of said motor vehicle." (Italics ours.)

Assuming, without deciding, that appellants were "guest passengers," still we can hardly conceive of stronger allegations of wilful or wanton misconduct, it being alleged that the operator of the car was driving eighty miles an hour at night, that he drove through a village at sixty miles an hour; that he boasted that he would go through a train if it didn't get out of the way; that he had been asked to let appellants out, knowing that not to do so would endanger them, and drove on, intoxicated, at a speed in excess of sixty miles an hour, and turned over.

These allegations, if proved, would establish an utter indifference to the safety of appellants.

In Universal Concrete Co. v. Bassett, 130 Ohio St. 567, 200 N.E. 843, 846, 119 A.L.R. 646, the Supreme Court of Ohio, citing with approval Conrad v. Wheelock, D.C., 24 F.2d 996, said: "A wrongdoer acts wantonly and wilfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist."

We have been cited to no decision of the Supreme Court of that state which would indicate that the allegations of the petition:

considered in their combined, concurrent and collective sense would not, if established, constitute wilful or wanton misconduct of the operator of the car within the meaning of the statute involved.

There was no merit in the first ground of the demurrer.

We think the second ground should likewise have been overruled.

The demurrers were filed on September 14, 1938, or two days before the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, became effective. By Rule 86, actions upon the demurrers were controlled by the new rules "except to the extent that in the opinion of the court their application in a particular action pending when the rules took effect would not be feasible or would work injustice * * *."

There is nothing to indicate that the relevant rules were brought to the court's attention; and there is no reason to except the court's rulings upon the demurrers from application of the new rules, since to apply them would be feasible and work no injustice.

Rule 7(c) abolishes demurrers altogether. And Rule 21 provides that, "Misjoinder of parties is not ground for dismissal of an action."

The judgments are reversed and the cases remanded for further proceedings consistent herewith.