**HEID BROS., Inc., v. SMILEY.**

**No. 5971.**

Court of Civil Appeals of Texas. Texarkana.
Aug. 12, 1942.

Rehearing Denied Oct. 1, 1942.

See, also, 144 S.W.2d 952.

C. C. McKinney, of Cooper, and Jackson & Stell, of Sulphur Springs, for appellant.

Long & Wortham and O. B. Fisher, both of Paris, for appellee.

HALL, Justice.

This is a suit by appellee for the balance alleged to be due him by appellant for hay shipped to it in December 1937, by appellee under the terms of a written sales contract theretofore entered into by them. Appellant answered by general demurrer and general denial and averred that it purchased 650 tons of U. S. No. 2 feeding hay, but appellee shipped lower grades of hay mixed with U. S. No. 2; that said hay was purchased by appellant to fill a contract it had with the United States Government at Fort Sill, Oklahoma; that several cars of said hay were refused by the Government at Fort Sill because of the inferior grade of some of the hay contained in the cars; that appellee fraudulently represented to appellant's agent that the hay purchased was of U. S. grade No. 2 feeding hay, which representations induced appellant to enter into the contract of sale. By cross action appellant averred that by reason of the refusal of said hay by the Government on account of its inferior grade, appellant·had been forced to reship said hay to other points in the State of Oklahoma and by said reshipment it incurred certain expenses, such as increased freight rates, demurrage, storage, etc. Appellant also alleged that it had been forced to purchase hay elsewhere at increased prices and freight rates to fill its contract with the United States Government; that these expenses incurred by it were in excess of $1,155, for which it sought judgment. Trial was to a jury upon special issues, and upon the ·answers returned judgment was rendered for appellee for the amount of his alleged indebtedness.

■ Appellant's point 1 is: "The plaintiff's (appellee's) petition was subject to defendant's (appellant's) general demurrer because it failed to allege that the plaintiff had performed his obligations under the contract, and in particular that he had presented bills of lading to the First National Bank of Paris, Texas, and drew the drafts on defendant as provided in the contract, and that the defendant refused payment of the drafts so drawn." The trial court overruled appellant's general demurrer on September 1, 1941, the day it was presented to him, as shown by the judgment. On that date the new rules of civil procedure became effective. Rule No. 90 of our Civil Procedure plainly asserts that "general demurrers shall not be used." Rule No. 814 provides: "These rules shall take effect on September 1st, 1941. They shall govern all proceedings and actions brought after they take effect, and also all further proceedings and actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure shall apply. * * *" Clearly, then, by the provisions of Rule No. 814, the new Texas Rules of Civil Procedure are applicable to this case, unless in the opinion of the trial court their application "would not be feasible or would work injustice" upon appellant. But there must be a ruling of the trial court on the feasibility and justness of the application of the rule before the complaining party can raise the question on appeal. Automobile Ins. Co. v. Springfield Dyeing Co., 3 Cir., 109 F.2d 533; John R. Alley & Co., Inc., v. Federal National Bank of Shawnee, 10 Cir., 124 F.2d 995; Weaver v. Mark, 6 Cir., 112 F.2d 917. The question of the applicability of the rules in any pending case at the time of their adoption is within the sound discretion of the trial court. Doyle v. Loring, 6 Cir., 107 F.2d 337. The source of Rule 814 is Federal Rule 86, Vernon's Texas Rules Civil Procedure (Franki) p. 619, and the part copied next above is identical with the Federal Rule. Therefore the decisions of the Federal Court, some of which were handed down before the adoption of our rules, are very persuasive, if not controlling. The record reflects no ruling by the trial court that the application of Rule 90 of our Civil Procedure would not be feasible or would work an injustice, therefore the action of the trial court in overruling the general demurrer can not be raised on this appeal.

■ But aside from the application of Rule 90 and Rule 814 of our Civil Procedure, we do not think appellee's petition vulnerable to a general demurrer. The contract entered into by appellant and appellee, and which is set out in full in appellee's original petition, in its last paragraph: "As a further and moving consideration for this sale Heid Brothers (appellant) promise, agree and guarantee that drafts accompanying bills of lading when delivered to The First National Bank of Paris shall be paid promptly to that bank." It is contended that a strict compliance with the above·paragraph of the sales contract by appellee must be alleged in his petition

before a recovery would be authorized. Appellee averred in his petition that "notwithstanding frequent demand made by plaintiff (appellee) of defendant (appellant) for the payment of said balance of $118.27, defendant has failed and refused and still fails and refuses to pay the same, to plaintiff's damage in the amount of said sum with legal interest thereon." As against general demurrer, this is a sufficient allegation of demand and failure of payment, and satisfies the requirement of the law even when tested by the last paragraph of the sales contract copied above. In Long v. McCauley, Tex.Sup., 3 S.W. 689, 691, it is said: "Plaintiff sufficiently alleged a compliance with the contract on his part. It was not necessary that he should have averred specifically and in detail the performance of every act which he had agreed to do. A general allegation to this effect was not only sufficient, but commendable for its brevity. Prolixity of pleading tends to confuse rather than to enlighten the courts and juries, and should be avoided." In 17 C.J.S., Contracts, p. 1174, § 539, it is said: "An allegation that defendant refused to pay plaintiff, although often requested, shows a sufficient excuse for not making a formal demand for payment." It is thought that the paragraph of the sales contract copied above has direct reference to the place of payment so as to fix venue in Lamar County, rather than the manner and method of payment. This was our holding on appellant's former appeal in this case from the order of the District Court of Lamar County overruling its plea of privilege to be sued in El Paso County. Heid Bros., Inc., v. Smiley, Tex.Civ.App., 144 S.W.2d 952. This point is respectfully overruled.

By points 3 and 5, appellant asserts that the trial court wrongfully entered judgment for appellee upon an incomplete verdict of the jury—special issues No. 2 and No. 4 not being answered. The sales contract entered into by appellant and appellee is:

"The following Sales Contract has been entered into by and between M. L. Smiley, of Paris, Texas, and Heid Brothers, of El Paso, Texas:

"M. L. Smiley has sold to Heid Brothers and Heid Brothers have purchased from M. L. Smiley not to exceed six hundred fifty (650) tons of the baled prairie hay now stored in M. L. Smiley's barn No. 1 at Brookston, Texas, and in O. E. McBath's barn on what is known as the Cobb place about six miles northwest of High, Texas, being the same hay inspected and graded by H. B. McKee, United States Inspector, and accepted by Edward C. Heid for Heid Brothers on that inspection and grading, the hay so sold and purchased hereunder being more particularly described as follows: approximately 225 tons out of the west end of Smiley's said barn No. 1; approximately 325 tons out of the west center of Smiley's said barn No. 1; approximately 50 tons out of the east alley of Smiley's said barn No. 1; approximately 50 tons out of the O. E. McBath barn.

"The price agreed upon between M. L. Smiley and Heid Brothers for the above described hay is eight and 50/100 dollars ($8.50) per ton, fob cars Brookston and High, Texas, payable to M. L. Smiley by Heid Brothers as follows: twenty-seven hundred Sixty-two and 50/100 dollars ($2762.50) cash on execution of this contract and the balance at the rate of four and 25/100 dollars ($4.25) per ton as cars are shipped, payable upon delivery of bills of lading to The First National Bank of Paris, in Paris, Texas.

"The further considerations of this sale and purchase are that cars of this hay shall be billed to such points as Heid Brothers may instruct and that M. L. Smiley, at his option, may load and bill this hay at the rate of two cars per day, any hay remaining of this sale in barns after sixty (60) days from the date of this contract to be carried at the risk of Heid Brothers and that their cost, insurance to be carried on the hay covered by this contract for the benefit of the parties hereto according to their respective interests.

"It is further mutually understood and agreed that the hay to be shipped under this contract is that inspected and graded by the said H. B. McKee at the Smiley and McBath barns and that his grading is accepted by Heid Brothers without any warranty upon the part of M. L. Smiley.

"As a further and moving consideration for this sale Heid Brothers promise, agree and guarantee that drafts accompanying bills of lading when delivered to The First National Bank of Paris shall be paid promptly to that bank."

Appellee's suit is for a balance alleged to be due him by appellant for hay shipped under and by virtue of the terms of above contract. During the trial the parties stipulated the following:

"It is agreed between the parties that Mr. Smiley, Plaintiff, shipped at the instance and on the order of Heid Bros. the hay described in exhibits attached to his original petition, such hay having been shipped on the dates in the cars of the weights and of the quantity by bales set forth in such exhibit.

"It is further agreed that the account attached to Plaintiff's petition as an exhibit correctly shows the charges by Mr. Smiley at the price stipulated in the contract for the hay shipped and correctly shows the payments made by Heid Bros. on the account."

It will be noted that the sales contract specifically describes the barns, and stacks in the barns, containing the hay purchased by appellant, and also as being the hay "inspected and graded by H. B. McKee" in the Smiley and McBath barns. McKee's grading and inspection was by the terms of said contract to be "accepted by Heid Brothers without any warranty of M. L. Smiley." The terms of this sales contract are plain and unambiguous, and the only attack made upon it by appellant in its pleading or proof is that appellee fraudulently represented to its agent that the hay purchased was of U. S. grade No. 2 feeding hay, and that such representations induced it to enter into the contract.

■ In answer to special issue No. 1, the jury found that the hay shipped by M. L. Smiley (appellee) in the month of December 1937, part of which is involved in this suit, was taken from the stacks of hay referred to in the contract as being in the Smiley barn No. 1 and O. E. McBath's barn. According to the terms of the contract, these were the places from which the hay was to be taken and shipped and the stacks and barns named in said issue contained the hay purchased by appellant. The evidence is undisputed that E. C. Heid, president of appellant corporation, brought with him to appellant's barn at Brookston, Lamar County, Texas, Mr. McKee, a federal hay inspector of Fort Worth, Texas. At the instance of E. C. Heid, McKee inspected the hay in appellant's barns and the McBath barn, after which inspection the sales contract above set out was executed. It is appellant's contention that it bought and that appellee sold to it, U. S. grade No. 2 feeding hay, while appellee contends that he sold to appellant and it bought the hay from the particular barns and stacks in said barns, inspected bv Mc-

Kee, and upon said inspection without regard to grade. In the sales contract between the parties no mention is made of the grade of hay to be delivered, but the hay purchased under its plain terms is simply described as being located in the two barns above named, and, as said before, in answer to special issue No. 1, the jury found that the hay shipped in December 1937, about which this controversy arose, was from the particular named stacks in the Smiley barn No. 1 and the McBath barn. This finding was sufficient to establish the fact that Smiley had complied with the terms of the sales contract in respect to the identity of the hay shipped by him, and was also sufficient to establish the fact that the hay shipped by Smiley was that bought by appellant. Appellant's contention that appellee represented that the hay purchased by it was of U. S. grade No. 2 feeding hay, and that on account of said representation it entered into the contract of sale, was submitted to the jury in special issue No. 3 and the jury answered said issue against the contention made by appellant. It is not contended that the sales contract was entered into through accident or mutual mistake of the parties.

■ But appellant contends that the judgment is without support in the verdict because of the jury's failure to answer special issues 2 and 4. Special issue No. 2 is: "Do you find from a preponderance of the evidence that the hay shipped by the plaintiff Smiley in the month of December 1937 was the same character and quality of hay referred to in the contract in this case and that was inspected by the witness McKee and accepted by E. C. Heid, as referred to in the contract in evidence before you?" Special issue No. 4 is: "Do you find from a preponderance of the evidence that the plaintiff, M. L. Smiley, in connection with the examination of this hay in question and the contract to be entered into between them, agreed and promised E. C. Heid that in shipping hay from said barns on the order of the defendant that it would take out of and not include in said shipment any hay that did not measure up in quality to U. S. No. 2 feeding hay?" These issues were not answered by the jury. No fraud entering into the execution of the sales contract as found by the jury, and there being no contention that its execution was effected by accident or mutual mistake of the parties, it is our opinion that the above issues became immaterial. Ætna

Life Ins. Co. v. Bulgier, Tex.Civ.App., 19 S.W.2d 821, writ refused; 41 T.J. p. 1222 Sec. 358. Under the finding of the jury that no fraud entered into the execution of the sales contract, amply supported by the record, said contract was binding upon the parties. Without allegations and proof of fraud, accident or mutual mistake in the execution of said contract, its terms could not be varied by parol evidence. As stated before, this sales contract was executed after McKee had finished his inspection and by its plain terms, Heid Brothers, Inc., appellant, purchased from Smiley, appellee, not to exceed 650 tons of hay, an estimated 600 tons of which was located in certain designated stacks in the Smiley No. 1 barn and fifty tons in the McBath barn, for a consideration of $8.50 per ton on cars at Brookston and High, Texas. These points are overruled.

The findings of the jury and the agreement heretofore set out as to the amount of hay shipped and the balance due therefor, taken in connection with the testimony of E. C. Heid to the effect that drafts drawn on appellant had not been paid, are sufficient to support the judgment.

We have carefully examined all other points advanced by appellant, they are thought to be without merit, and are respectfully overruled.

The judgment of the trial court is affirmed.