## LEVINE v McFARLIN

Ohio Appeals, 6th Dist, Huron Co

Decided April 20, 1936

Young & Young Norwalk, for appellee.
G. Ray Craig, Norwalk, for appellant.

### OPINION

By LLOYD, J.

On March 23, 1935, Harry Levine, a minor sixteen years of age, by his mother as his next friend, filed his petition in the Court of Common Pleas to recover damages

for personal injuries alleged to have been occasioned by the "wanton negligence" of Kent McFarlin, as defendant, who was also a minor and in whose automobile, operated by him, Levine was riding as a guest when the alleged injuries occurred. In the petition the alleged "wanton negligence" is thus particularized:

"1st. Defendant wantonly drove said automobile upon said highway and over a bridge crossing over the railroad tracks of The Baltimore & Ohio Railroad Company in such manner and at such a rate of speed that this plaintiff was thrown around with great force and violence, injuring him as hereinafter set forth.

"2nd. The defendant wantonly operated said automobile at a rate of speed which was then and there greater than was reasonable and proper and so as to endanger the life and limb of this plaintiff, then lawfully upon said highway, the exact speed being unknown to plaintiff.

"3rd. Defendant wantonly failed to keep the automobile which he was driving under control or to keep a lookout therefrom and drove the same upon said bridge, although he knew the same was rough and uneven; and drove said automobile wantonly knowing one of the shock absorbers was defective."

Then it is alleged that "as a direct result of the carelessness and negligence aforesaid this plaintiff received" certain permanent injuries. To this petition a demurrer was filed and overruled, whereupon an answer by the guardian ad litem of McFarlin was filed which, excepting an admission that the defendant was a minor, is a general denial. The trial resulted in a verdict for Levine for $750. From the judgment thereon McFarlin appeals to this court alleging among other commitments of errors by the trial judge that the petition failing to state a cause of action, the demurrer thereto should have been sustained and that the motion for a directed verdict at the close of all of the evidence should have been granted.

Did the petition state a cause of action? The pleader, we assume, may be pardoned for using the term "wanton negligence" since the stamp of approval had been placed upon such use by the Supreme Court prior to and until the decision in the case of Universal Concrete Pipe Co. v Bassett, 130 Oh St, 567, 200 NE, 843. Mere speed, without some conjunctive facts or circumstances to make it so, would not constitute wanton misconduct or even negligence. We have always understood that to be the law and we have understood also that an allegation that an automobile was "operated at a rate of speed which was then and there greater than was reasonable and proper and so as to endanger the life and limb" of another, without other alleged attendant circumstances, was at the most an allegation merely of a failure to exercise ordinary care, that is, negligence; and a similar observation is equally applicable to the third specification of negligence above quoted from Levine's petition. The mere injection of the word "wanton" cannot create a fact that the petition does not otherwise allege. Our necessary conclusion, therefore, must be that the demurrer to the petition should have been sustained.

Nevertheless, trial was had on the evidential facts with the resulting verdict above mentioned.

In the evening of the day of the accident, Levine, McFarlin, June White and Gladys Perrin. with fourteen other high school students, had been engaged in what is designated as a "treasure hunt." After enjoying a "picnic and bonfire" and attending a dance at a hall located on or near state route No. 99, the four of them started for home, McFarlin and Miss Perrin in the front seat and Levine and Miss White in the rumble seat. Levine testified that they started out on a gravel driveway which turned into highway No. 99. He says:

"He (McFarlin) started out fast and * * * as he was pulling out of the driveway the wheels slipped and I hollered out for him to watch out, and we started on again and kept on going."

There was no rain or snow, the pavement was dry and the air quite cool; the distance from where they entered the highway to the bridge where the accident occurred being about a mile after leaving the gravel driveway and entering upon highway No. 99. Levine having gone to sleep, could not tell how the accident happened. Miss White, who was sitting with Levine, says she does not know the speed of the automobile or the distance from the dance hall to the bridge where the accident occurred, that when entering upon the bridge that crosses the Baltimore & Ohio Railroad tracks "there was a bump of some kind" that jarred them from their seats and "then we hit another bump," after which "the car was going back and forth

on the road for a while and it seemed as though we was going to straighten up, and the last I knew I was out of the car and Harry was missing." McFarlin testified that he had never been over the bridge before and that he was proceeding at a speed of about 35 miles an hour as he approached the bridge, in any event not to exceed 37 or 38 miles an hour. He says:

"I didn't know anything about the bridge being there on No. 99, * * * it was a hill and I didn't know whether there was a bridge there or not, and I approached and I didn't have time to put on the brakes or anything and the car went up in the air and that is the last I remember until it turned over on its side. I got a blow on the side of the head, in fact I carry the scar yet."

He says he didn't hear anyone say: "Take it easy or anything like that." He said he had no knowledge that "one of the shock absorbers" was defective, and that he didn't see the black and white approach signs on the railings of the bridge until he "finally got almost on top" approximately "within 30 feet of them."

Miss Perrin stated that it was about a mile from the dance hall to the bridge and that McFarlin was driving at a speed of between "35 and 40 miles," not in excess of 40 miles an hour. Like the others, she says a bump was struck as they "went onto the bridge and then there was another bump," the second one being the one that caused the car to swerve "from side to side."

The foregoing are the essential facts shown by the record, which it is claimed constitute "wanton negligence." If the facts in the Bassett case do ▮▮▮▮ not warrant a finding of wanton misconduct, then assuredly the facts in the instant case fall far short thereof.

The judgment is reversed and final judgment entered for the appellant McFarlin.

Judgment reversed.

OVERMYER and CARPENTER, JJ, concur.