Bell, J.
Having taken from any possible consideration by the jury the allegations of false imprisonment, the trial court, on motion to direct a verdict, was faced first with the question of whether the petition states a cause of action for malicious prosecution. See Morgenstern v. Austin, ante, 113.
In 22 American Jurisprudence, 353, False Imprisonment, Sections 2 and 3, it is said:
“False imprisonment has been said to be the unlawful restraint by one person of the physical liberty of another. In this phrase, the word ‘false’ seems to be exactly synonymous with ‘unlawful.’ False imprisonment has been defined by statute as ‘the unlawful violation of the personal liberty of another’ # # #
“As is seen from the definitions, false arrest and false imprisonment as causes of action are indistinguishable. The only distinction lies in the manner in which they arise. In a false arrest, false imprisonment exists, but the detention is by reason of an asserted legal authority to enforce the processes of the law; in a false imprisonment, the detention is purely a matter between private persons for a private end, and there is no intention of bringing the person detained before a court, or of otherwise securing the administration of the law.
“An action for false imprisonment is closely akin to the actions for malicious prosecution, abuse of process, and vexatious suit. # * * Both courts and text writers have sometimes confused these causes of action * * *. In false imprisonment, the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification; and the good intention of the defendant does not excuse, nor does his evil intention create, the tort. # * # Although malicious prosecution and false imprisonment are frequently confused, the distinction between *244 them is fundamental. In the case of malicious prosecution, as in abuse of process, valid process justifies restraint or imprisonment, and the gist of the cause of action is malice or evil intent. * * * A suit for false arrest or false imprisonment is the proper action where the aggrieved party is arrested without legal process, or under a void process; but where the process on which tlae arrest is made is regular on its face, but is sued out maliciously and without probable cause, the remedy is an action for malicious prosecution.” (Emphasis added.)
This distinction was recognized by this court in Brinkman v. Drolesbaugh, 97 Ohio St., 171, 119 N. E., 451, L. R. A. 1918F, 1132, where it is said, in the second paragraph of the syllabus :
“False imprisonment per se is not concerned with good or bad faith, malicious motive or want of probable cause on the part of the prosecuting witness, or the officer causing the imprisonment. If the imprisonment was lawful, it is not the less lawful that any or all of the foregoing elements existed. These elements relate to an action of malicious prosecution, but are not essential to an action in false imprisonment.”
The essential elements of fact in an action for malicious prosecution and the necessity for alleging those elements were established early in Ohio in the case of Anderson v. Buchanan, Wright, 725, in which it was held:
‘ ‘ To sustain an action on the case for malicious prosecution, malice and the want of probable cause must concur, and the prosecution be at an end. This must be alleged, and is so in this case. ’ ’
Those requirements have been since adhered to by this court. Woodruff v. Paschen, 105 Ohio St., 396, 137 N. E., 867.
The petition herein unquestionably alleges both the termination of the prosecution favorable to the plaintiff and the lack of probable cause. Is the third element, that of “malice,” properly alleged? If the words, “acted wantonly * * * and in reckless disregard of the rights of the plaintiff,” can be interpreted as an allegation of “malice,” that question must be answered in the affirmative.
The majority of the members of this court are of the opinion that the conduct of a party may be either “wanton” or “reckless” and still not have been actuated by malice or ill *245 will. And in the concept in which “wanton” is most frequently encountered — in the field of negligence and more particularly in regard to the guest statute — to constitute “wanton negligence” (a term no longer sanctioned in Ohio but succeeded by the term, “wanton misconduct,” in guest statute cases) it is not necessary that there be ill will toward the person injured. Higbee Co. v. Jackson, 101 Ohio St., 75, 128 N, E., 61, 14 A. L. R., 131; Universal Concrete Pipe Co. v. Bassett, 130 Ohio St., 567, 200 N. E., 843, 119 A. L. R., 646.
And were it not for certain wording in an illustrative phrase used in both the syllabus and opinion of Davis v. Tunison, 168 Ohio St., 471, 155 N. E. (2d), 904, we would have no difficulty in holding that an allegation of “wantonness” does not constitute the requisite allegation of malice in an action for malicious prosecution.
The primary point for decision in Davis v. Tunison, supra, was whether the question of punitive damages could be submitted to a jury in the absence of proof of actual malice. This court held it could not. But it also held, and properly so, that actual malice may be inferred from conduct and surrounding circumstances, provided there is evidence to reasonably justify the inference. This could have been decided just as effectively if the second paragraph of the syllabus had read :
“Actual malice may be inferred from conduct and surrounding circumstances, such as a malicious prosecution, but there must be evidence from which such malice can reasonably be inferred to justify punitive in addition to compensatory damages.”
To include, by way of illustration of such “conduct and surrounding circumstances,” a malicious prosecution of one “wantonly, recklessly, and without justification” is to beg the question, because, as we have pointed out, the elements of malicious prosecution have long been established, and, in our opinion, more than an allegation of wantonness is required.
Since, however, the petition herein is being examined as if on demurrer, the allegations thereof must be liberally construed in favor of the plaintiff, and the plaintiff must be given the benefit of whatever can, by reasonable intendment, be implied from those allegations. Glass v. McCullough Transfer Co., 159 Ohio St., 505, 112 N. E. (2d), 823.
*246 Since malice may be inferred from proof of lack of probable cause (Melanowski v. Judy, 102 Ohio St., 153, 131 N. E., 360), we are constrained to hold that plaintiff’s petition is sufficient to warrant proceeding to trial, although in doing so we do not intend to place a stamp of approval on this method of pleading a cause of action for malicious prosecution. (It is interesting to note that the petition used herein appears to closely follow form 4605 on page 505, 6 Ohio Procedural Forms [1948 Replacement], According to the editors of Ohio Procedural Forms, this form was designed for use in cases of false imprisonment and obviously not for use in actions for malicious prosecution. Form 4605 is entitled “Petition for False Imprisonment — Punitive Damages. ’ ’)
We are then faced with the question of whether this record reveals any evidence of lack of probable cause from which the essential element of malice may be inferred.
An almost classic definition of probable cause, as it pertains to a malicious prosecution action, was adopted by this court, as follows, in Ash v. Marlow, 20 Ohio, 119:
“What, then, is the meaning of the term ‘probable cause’? We answer, a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.”
The following excerpts from the testimony of Henry Ron-ski, a detective in the Cleveland Police Department, who was called as a witness by the plaintiff, are pertinent to the question of probable cause.
‘ ‘ Q. Who were those people who came forward for the purpose of co-operating with the police? A. Those three disinterested witnesses that were at the scene of the crime at the time. ’ ’
After the court sustained an objection to the use of the word, “disinterested,” the question was rephrased, and the following appears in the record:
“Q. I will ask you what three witnesses you had in mind as you described them from the stand? A. Eva Baker, Mary Lipscomb and Sarah Rucker.
“Q. Now, in addition to those three persons was there any *247 body else who participated in the investigation? A. Indirectly; yes.
“Q. Now, directly, was it James Barbera who had come forward with his statement to assist you in your investigation? A. Yes; he did.
“Q. And he gave you that — he gave a statement, didn’t he? A. Yes; he did.
“Q. That has been admitted here into evidence, and the other three witnesses as described in this summary gave statements? A. Yes, sir; that’s right.
“Q. So that the statements of those three persons and the statement of James Barbera were obtained. Did James Barbera do anything else more in your investigation of this matter of Henry Rogers than any one of the other three witnesses ? A. Did he do more than any of the other witnesses ?
“Q. You indicated here, I think, giving you a statement? A. Other than he was the victim of the robbery.
“Q. Other than he was the victim he did nothing more in your investigation than any of the other witnesses had done? A. No, sir.
( t % ^ ^
“Q. But to the extent you are familiar with it, to the best of your knowledge, the first knowledge you have of Henry Rogers being in a lineup was on March 28, or Sunday? A. Sunday; that’s right.
“Q. At that time, if you remember, who viewed Henry Rogers in the lineup? A. James Barbera and the three witnesses I mentioned.
“Q. At that time did they without question pick him out as the man who had been one of the two men committing the robbery? A. Yes; they all identified him.
“Q. Their identification was positive? A. They said their identification was positive.”
The record also clearly indicates that the police officer, Detective Ronsld, signed the affidavit as a result of which the plaintiff herein was arrested. Detective Ronski’s testimony on this matter is as follows:
“Q. So that your signing of the affidavit in this case represents an unusual practice? A. An unusual practice.
*248 “Q. Wlien you signed this affidavit, Detective Ronski— strike that question, please. Why, then, in this case, did you sign the affidavit rather than one of the complaining witnesses? A. Well, chiefly for the simple reason that due to the fact that we had, at that time, sufficient evidence I deemed it all right for myself to sign the affidavit.
i Í * % %
“Q. So the matter of the signing of the affidavit, Detective Ronski, was a matter that was entirely within your control, a matter whether you could sign, or not sign? A. Yes, sir.
“Q. Did James Barbera tell you to sign the affidavit? A. No; he did not.”
Clearly, the defendant here, the victim of the alleged robbery, did nothing more than three other witnesses. All gave statements concerning the robbery and all identified the plaintiff in a police lineup. So satisfied were the police with the identification that one of the police officers followed the “unusual” practice of signing the affidavit himself.
Although some doubt might be expressed, in view of these facts, whether the defendant herein initiated any prosecution, malicious or otherwise, we have no doubt that the concurring identification by three other witnesses sufficiently insulated the defendant from the resultant prosecution as to enable us to say as a matter of law that there was no lack of probable cause for his action.
If the plaintiff herein had in mind a conspiracy between the defendant and the other identifying witnesses to cause the arrest of plaintiff, it was certainly incumbent upon him to allege and prove it. Neither the petition nor the record would sustain such a contention.
It follows that the Court of Common Pleas erred in refusing to sustain the defendant’s motion for a directed verdict, that the judgment of the Court of Appeals should be reversed, and that final judgment should be entered for the defendant. The cause is hereby remanded to the Court of Common Pleas with instructions to enter final judgment for the defendant.

Judgment reversed.

Weygandt, C. J., Zimmerman, Taft, Matthias, Herbert and Peck, JJ., concur.