3701.18, Revised Code, and it could not therefore enter into an enforceable contract to do this before said plans were approved by the department of health.

Said contract if not invalid is certainly unenforceable.

As to the cross-petition, the defendants have failed to offer sufficient evidence to support their cross-petition.

The court will therefore approve an entry dismissing the plaintiff's petition and the defendants' cross-petition; each party to bear their own costs.

WAPPELHORST *v.* KIMMETT ET AL.

(No. 53168—Decided June 20, 1968.)

Common Pleas Court of Allen County.

*Mr. David J. Young* and *Messrs. Dunbar, Kienzle & Murphy,* for plaintiff.

*Mr. C. M. Cable* and *Messrs. Cable & Cable,* for defendants Daniel E. Kimmett and Mrs. Lawrence Kimmett.

*Mr. Richard Meredith* and *Messrs. Meredith, Meredith, Tait & Basinger,* for defendants Cynthia A. Alt and Mrs. Basil Alt.

*Mr. William C. Leonard* and *Messrs. Cory, Boesel, Leonard & Cory,* for defendant Homer F. Nevergall.

HITCHCOCK, J. (By assignment from Paulding County.) The facts related in the petition might seem fanciful

in a work of fiction. Nevertheless, plaintiff's petition reads:

"1. On August 31, 1966, defendants Daniel Kimmett and Cynthia Alt were minors, under 18 years of age. Daniel's mother, Mrs. Lawrence Kimmett, signed the application for his driver's license which was in effect on that date. Cynthia's mother, Mrs. Basil Alt, signed the application for her driver's license which was in effect on that date.

"2. At all times mentioned herein, Piquad Road was a public thoroughfare for vehicular traffic within Allen County, Ohio, running in a general easterly and westerly direction.

"3. On August 31, 1966, at approximately 10:20 p. m., plaintiff was driving his 1964 Honda in an easterly direction on Piquad Road at a point approximately one mile east of State Route 66, when he collided with a 1961 Chrysler sedan automobile owned by Cynthia Alt's father and being operated by Cynthia Alt and Daniel Kimmett.

"4. At the time of the collision, the Alt vehicle was parked upon the main travelled portion of Piquad Road in the eastbound lane. Piquad Road at that point was approximately 20 feet in width. At the time of the aforesaid collision, the road and surrounding area were quite dark, and the Alt vehicle occupied a sufficient portion of the main travelled part of the road so as to prevent free passage by other vehicles proceeding in an easterly direction.

"5. The Alt vehicle was parked just east of a bridge on Piquad Road and the bridge was reflectorized. No lights or reflectors on the Alt vehicle were visible to plaintiff as he approached said vehicle. Neither Cynthia Alt nor Daniel Kimmett had placed any warning signals to the rear of the parked automobile. There were other nearby places where Cynthia Alt and Daniel Kimmett could have parked their vehicle off the paved portion of the highway.

"6. As plaintiff approached the Alt vehicle on Piquad Road, Cynthia Alt and Daniel Kimmett saw plaintiff's vehicle approaching and failed to provide any warning that their vehicle was parked without lights and was occupying the paved portion of the highway.

"7. As a direct result of the collision with the Alt

vehicle, plaintiff was thrown from his vehicle onto Piquad Road in the west-bound lane of travel. The injuries received by plaintiff when he collided with the Alt vehicle rendered him unable to move after he was thrown onto the pavement.

"8. Thereafter, while plaintiff was still lying in the west-bound lane of travel, defendant Homer F. Nevergall was operating his 1961 Dodge sedan automobile in a westerly direction on Piquad Road and approaching the scene of the initial collision. Daniel Kimmett and Cynthia Alt were aware that plaintiff was lying on said road in a helpless position and although they did turn the lights of their automobile on after the initial impact, they failed to move their automobile, warn approaching traffic or to take other appropriate measures to protect plaintiff from being injured by other vehicular traffic. They also moved about in such a fashion that they diverted Nevergall's attention from plaintiff's position on the road. Defendant Nevergall's automobile had defective brakes and he failed to maintain a proper lookout as he approached the scene. Nevergall failed to stop, ran his automobile over plaintiff and dragged him a substantial distance over the highway. Defendant Nevergall knew prior to this collision that his automobile had defective brakes.

"9. As a direct and proximate result of the aforesaid wanton misconduct and negligence on the parts of Daniel Kimmett, Cynthia Alt, and Homer F. Nevergall, plaintiff suffered severe and substantial injuries to his abdomen and the organs, muscles, veins, and arteries located therein. He suffered an extensive laceration of the abdomen, the loss of the right kidney, a large stellate laceration of his liver, damage to the motor and sensory nerves in the abdomen, and the gall bladder was torn from its fossa in the liver. The surgery necessitated by these injuries included repair of evisceration, repair of fractured liver, a right nephrectomy, a cholecystectomy and closure of the common duct. All of said injuries and disabilities are permanent and plaintiff was left with permanent scars in the abdominal region.

"10. As a further direct and proximate result of the aforesaid wanton misconduct and negligence on the parts of Cynthia Alt, Daniel Kimmett and Homer Nevergall, plaintiff was hospitalized for 18 days and was confined to his home for a period of approximately six weeks thereafter. Plaintiff was unable to engage in gainful employment from August 31, 1966, until November 28, 1966, to his damage in the approximate amount of $1,800, and his earning power has been permanently impaired. Plaintiff has incurred medical, drug and hospital expenses to date in the approximate amount of $2,461.65 and will be required to incur further medical, hospital and surgical expenses in the future, the exact amount of which he is unable to state at this time.

"Prior to August 31, 1966, plaintiff had made arrangements to enter college at the Lima Branch of Ohio State University. The aforesaid injuries forced cancellation of those plans.

"11. All of the aforesaid injuries are to plaintiff's damage in the amount of $254,261.65."

All defendants have filed motions to strike various words. They are unanimous in asking that the words "wanton misconduct" be stricken from paragraphs 9 and 10.

All motions are overruled for reasons hereinafter stated and on the authority of *Richards* v. *Farm-Orama* (1965), 3 Ohio Misc. 13, which this court regards as an exceptionally lucid, comprehensive, and correct statement of the law of Ohio in respect to pleading.

At the hearings on the motions to strike, counsel advanced serious arguments for and against permitting the words "wanton misconduct" to remain in the petition. At the conclusion of the argument it was the court's feeling that the words "wanton" and the letters "mis" should be stricken for the reason that it did not seem necessarily proper to permit the petition to employ language terms seeming to assume an ultimate fact which plaintiff will likely need establish to justify recovery against at least some of the defendants.

Upon a review of Ohio authority, however, the court

has reached a contrary conclusion. In *Mays* v. *Minnich* (1935), 19 Ohio Law Abs. 516, the petition charged "wilful and wanton misconduct" on the part of the defendant. The case involved an Illinois accident in which that state's guest statute was invoked and defendant attempted to show he was only guilty of negligence. A verdict for plaintiff in the amount of $1,167.33 was returned. The evidence was that defendant, against protests of plaintiff, was driving so fast on a slippery highway made wet by a heavy fog, that he failed to negotiate a slight bend in the road and his auto skidded over and across the shoulder of the highway partly into a ditch, turned over sideways three times, and came to rest about five hundred feet west of the point where the automobile left the concrete pavement. Judgment *n. o. v.* was entered because the jury answered an interrogatory—"No. 3. Was that negligence of defendant the proximate cause of the injuries to plaintiff? Answer: Yes."

The trial court had not felt that the same set of facts could be, at the same time, characterized as both negligence and wanton misconduct. Finding that wanton misconduct is both negligence and more, the Court of Appeals for Montgomery County in an opinion by Judge Hornbeck, reversed the trial court, the final paragraph reading (at page 522):

"Upon a fair consideration, then, of the stipulation, together with the pleadings, general and special findings, we are satisfied that judgment should be entered upon the general verdict without reference to the special findings of fact." In No. 25448, a motion to certify was overruled by the Ohio Supreme Court September 25, 1935.

In *Patterson* v. *Garrison* (1937), 24 Ohio Law Abs. 226, the jury returned a verdict for plaintiff in the sum of $2,500 on a petition originally charging wanton misconduct on the part of the defendant. On the day of the trial, however, this charge was withdrawn. Nevertheless, on the evidence, the trial court charged on the law of wanton misconduct and the jury found in accord with plaintiff's evidence and contention. Again, Judge Hornbeck for the Court of Appeals of Montgomery County wrote the opinion of the court

sustaining the verdict, one judge dissenting. Again, a motion to certify was filed in the Supreme Court of Ohio but overruled June 7, 1937, in No. 26550.

When the petition clearly narrates facts which, if proven, produce legal consequences it has rarely, if ever, been declared bad to characterize them as constituting negligence, willfulness, or wantonness. And where such characterization is not used with crude redundancy its only effect is to enlighten the defendant as to what plaintiff understands the legal nature of his claim to be.

The cases involving the guest statute (wherein a guest has no cause of action against his driver host for injuries suffered unless the result of driver's wanton or willful misconduct) present the identical legal issue involved here. Judge Leach's article "Burden of Pleading—Guest Statute and Last Clear Chance" (1962), 23 O. S. L. J. 423, discusses many of these cases. He notes that in *Hasbrook* v. *Wingate* (1949), 152 Ohio St. 50, Judge Hart in the opinion of the court said:

"Since the liability of the motorist host to a person riding with him depends on the status of the latter, he, the latter, has the burden of establishing such relationship as entitles him to recover. * * *"

Here the Supreme Court unanimously reversed a verdict for the plaintiff mother-in-law of the defendant driver. Plaintiff's petition did allege that she was riding with defendant "but not as a guest while being transported without payment therefor." It failed, however, to characterize his conduct as either willful or wanton. Plaintiff's evidence showed only that occassionally, perhaps about once every two weeks over a period of time, plaintiff gave defendant $1.00 for gasoline. There was no express agreement or facts from which one could be implied indicating that plaintiff was a passenger for consideration. Moreover, as stated in mentioned opinion at page 54:

"In the instant case, no contention was made and no evidence was adduced to support a claim that the defendant was guilty of wilful or wanton misconduct in the operation of his car."

Conceding for sake of argument that driver defendant

was guilty of negligence only, the judgment for the plaintiff was reversed and final judgment was rendered for defendant by reason of the guest statute.

Judge Leach also noted that "It has been held that wanton misconduct and ordinary negligence are joinable in the same cause." Citing *Universal Concrete Pipe Co.* v. *Bassett* (1936), 130 Ohio St. 567, and added, "Thus separate causes of action may be contained in the same petition, one basing a claim of recovery on a 'non-guest' status and negligence, the other being based on a 'guest' status and willful or wanton misconduct."

In the fact situation alleged in this petition it seems likely that plaintiff, at least as against minor defendants Alt and Kimmett, may be found to be chargeable with contributory negligence and possibly as against defendant Nevergall. Also, depending upon the precise nature and detail of the evidence actually adduced it seems not unlikely that defendant Nevergall might be found chargeable with wanton misconduct and just possibly minor defendants Alt and Kimmett. Until the evidence is concluded, however, the court can make no judgment as to the issues actually raised by the law and the evidence for determination by the jury.

Section 2309.04, Revised Code, reads:

"The first pleading shall be the petition by the plaintiff, which must contain:

"(A)  A statement of facts constituting a cause of action in ordinary and concise language;

"(B)  A demand for the relief to which the plaintiff claims to be entitled. If the recovery of money is demanded, the amount shall be stated, and if interest is claimed, the time for which interest is to be computed shall be stated."

Plaintiff having in every substantial way commendably complied with this statute, all motions to strike, in all particulars, must be overruled. See *Richards* v. *Farm-Orama,* *supra.*

Accordingly, an order overruling all motions while saving exceptions to all defendants, is filed herewith.

*Motions overruled.*