Stephenson, J.
 

 It is becoming ultra-fasbionable in Ohio in personal injury cases to allege that tbe acts or omissions that proximately caused tbe injuries complained of were wanton.
 

 Tbe term “wilful” is seldom used alone, but quite often tbe acts or omissions are characterized as both wilful and wanton. We have no degrees of negligence in Ohio. We define negligence as tbe failure to exercise ordinary care, and we can properly denominate such negligence as ordinary negligence. In some jurisdictions it is referred to as “simple” negligence, in
 
 *572
 
 others “mere” negligence. There is “method in the madness” that prompts the nse of the word “wanton” in such cases. In the first place it is difficult of definition, but that is not its cardinal virtue. The unfortunate individual against whom wanton misconduct is charged is deprived of his plea of contributory negligence. He may have a plea of contributory negligence so chock full of merit that it would defeat a particular action for damages for ordinary negligence instanter, but when the party who institutes the action by simple legerdemain places the word “wanton” before the specifications of negligence, the unfortunate defendant is barred of the only meritorious plea he had, and he is driven to the extremity of a general denial — a most dangerous plea in an action for damages for personal injury.
 

 That is not the only “wallop” that the little word “wanton” carries with it. It permits, in addition to compensatory damages, the assessment of punitive damages — damages by way of punishment, if you please; damages of such nature against which, when reduced to judgment, a discharge in bankruptcy can not be had; damages in such an amount as will cure the reckless driver of a motor vehicle from driving recklessly, and mayhap cure him from driving entirely, for if he must respond in punitive damages, the chances are that he will have nothing to drive.
 

 The amount of punitive damages that can be recovered in a “wanton” case is limited only by the amount the injured party sees fit to insert in his petition, as our courts will not permit a party to recover more than he prays for.
 

 Wanton misconduct is a veritable Gibraltar against which the storms of excessive damages, passion and prejudice can beat without avail, as no court will attempt to enter a remittitur against a verdict tinctured with punitive damages. Punitive damages should be awarded in a real, genuine, honest-to-goodness wan
 
 *573
 
 ton misconduct case, but tbe party who injects the ingredient of 'wantonness in a case where the facts do not warrant it is playing with fire and may ruin a perfectly good case, if based on ordinary negligence.
 

 Wantonness is a synonym for what is popularly known as “cussedness,” and cussedness is a disposition to perversity. An act or omission does not become wanton at the whim or caprice of the pleader, any more than a threatened injury in a suit for injunction becomes irreparable simply because the pleader says so. Facts must be pleaded which reveal on their face the element of wantonness, and they must be proved as pleaded.
 

 Wanton negligence was first defined by the Supreme Court of Ohio in the case of
 
 Higbee Co.
 
 v.
 
 Jackson,
 
 101 Ohio St., 75, 128 N. E., 61, 14 A. L. R., 131, viz.:
 

 “3. To constitute wanton negligence it is not necessary that there should be ill-will toward the person injured, but an entire absence of care for the safety of others, which exhibits indifference to consequences, establishes legal wantonness. Such a mental attitude distinguishes wrongs caused by wanton negligence from torts arising from mere negligence.
 

 “4. The simple violation of a statute or ordinance does not of itself constitute wilful and wanton negligence. * * *”
 

 It will be noted that in this case and the following case cited the term “wanton negligence” was used. We no longer indorse the use of such term, as it is a misnomer.
 

 The third paragraph of the syllabus in the case of
 
 Higbee Co.
 
 v.
 
 Jackson, supra,
 
 was approved and amplified in the case of
 
 Reserve Trucking Co.
 
 v.
 
 Fairchild,
 
 128 Ohio St., 519, 191 N. E., 745, in the second paragraph of the syllabus, as follows:
 

 “The term ‘wanton negligence’ implies the failure to exercise any care for the safety of those to whom
 
 *574
 
 a duty of care is owing when the wrongdoer has knowledge of the great probability of harm to such persons which the exercise of care might avert and exhibits a reckless disregard of consequences.”
 

 In the case of
 
 Payne, Dir. Genl. of Rds.,
 
 v.
 
 Vance,
 
 103 Ohio St., 59, 133 N. E., 85, the court was dealing with the issue of “wilful and wanton misconduct,” and in the eighth paragraph of the syllabus made the following pronouncement of law:
 

 “An instruction to the jury which attempts to define wilful acts or wantonness, which does not include the element of defendant’s knowledge of plaintiff’s danger, or such conscious indifference to consequences as would be the equivalent of wilful and intentional injury, is erroneous.”
 

 The crafty pleader would avoid the danger created by this definition by using the term “wanton misconduct” alone, and referring the court back to the third paragraph of the syllabus in
 
 Higbee Co.
 
 v.
 
 Jackson, supra,
 
 which was in no wise modified or overruled in the
 
 Payne case.
 
 “Wanton negligence” was specifically defined in the
 
 Eigbee case,
 
 and there is a combined definition of wilful and wanton negligence in the
 
 Payne case.
 
 In a situation of this character he would stand on the common sense proposition that as between a specific definition and a combined definition of a term by the same court, the specific definition must be given preference and precedence.
 

 There has been a great deal of pioneering and experimentation in the courts of Ohio relative to so-called “wilful and wanton negligence,” and it is high time that we set ourselves right.
 

 In the first place, there is no such thing as wilful negligence and there is no such thing as wanton-negligence.
 

 Although actions for wilful or wanton conduct have often been treated under the head of negligence ac
 
 *575
 
 tions, “An action based upon wilful or wanton misconduct is apart from tbe action for negligent conduct. * * * The difference is one of kind, not merely of degree. Negligence does not have for its base either wilfulness or wantonness, while misconduct which is merely negligent is never either wilful or wanton.”
 
 Bordonaro
 
 v.
 
 Senk,
 
 109 Conn., 428, 147 A., 136.
 

 A wrongdoer acts wantonly and wilfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.
 
 Conrad
 
 v.
 
 Wheelock,
 
 24 F. (2nd), 996.
 

 “Wilful, wanton, malicious or intentional conduct is not properly speaking within the meaning of the term ‘negligence.’ Wilfulness or wantonness imports premeditation or knowledge and consciousness that injury will result from the act done, whereas ‘negligence’ conveys the idea of inadvertence as distinguished from premeditation or formed intention. Yet in the opinions one not infrequently finds the expression ‘wilful negligence’; and it is explained that ‘to constitute wilful negligence, the act done or omitted to be done must be intended,’ or must involve ‘such reckless disregard of security and rights as to imply bad faith.’ But ill will is not a necessary element of this wilful or wanton negligence. * * * The proposition has been formulated as follows: To constitute wilful injury, there must be design, purpose, and intent to do wrong and inflict the injury; while to constitute wanton negligence, the party doing the act or failing to act must be conscious, of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury.”
 

 This is a collation taken from 20 Ruling Case Law, page 20, Section 15, and the cases there cited are suffi
 
 *576
 
 ciently indicative as to the overwhelming weight of authority to the effect that there is no such thing as wilful or wanton negligence.
 

 The most recent text writers treat “mere negligence” and “wilful” and “wantpn” negligence as follows:
 

 “The word ‘negligent’ is often used to include all conduct which, although not intended to invade any legally protected interest, has the element of social fault. Conduct which is in recldess disregard of a legally protected interest of others is thus constantly spoken of as a form of negligence, the phrases used being ‘reckless,’ ‘wanton’ and ‘wilful negligence,’ as distinguished from ‘negligence’ or ‘mere negligence.’ But * # * conduct recklessly disregardful of an interest of another differs from negligence in several important respects:
 

 “1. the rule that contributory negligence is no defense to an act intended to invade the plaintiff’s interest is applied where the conduct is in reckless disregard of the plaintiff’s interest;
 

 “2. greater culpability is recognized by the imposition of punitive damages in many jurisdictions;
 

 “3. there is a pronounced tendency to regard reckless conduct as the legal cause of a particular harm, although the actor’s conduct if merely negligent would not have been so considered;
 

 - “4. in some jurisdictions the liability of a landowner to a trespasser or a gratuitous licensee is imposed only when the presence of the trespasser or licensee is known and the risk created by the actor’s conduct is out of all proportion to its social utility;
 

 “5. in the construction of statutes which specifically refer to gross negligence, that phrase is sometimes construed as equivalent to recldess disregard;
 

 “6. in those jurisdictions where the distinction between trespass and trespass on the case is still of im
 
 *577
 
 portanee, reckless disregard is assimilated to intende: harm to the extent that an action for trespass will lie
 

 “Notwithstanding the difficulty of drawing the lint between negligence and reckless conduct, these differ^ enees make it advisable to treat the two subjects separately.”
 

 See Special Note. Restatement of The Law of Torts, Section 282, page 740.
 

 Likewise in Section 500, page 1293, of the same authority, we find the following:
 

 “Reckless Disregard oe Saeett Defined.
 

 “The actor’s conduct is in reckless disregard of the safety of another if he intentionally does an act or' fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor’s conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.
 

 “Special Note:
 
 The conduct described in this Section is often called ‘wanton or wilful misconduct’ both in statutes and judicial opinions. On the other hand, this phrase is sometimes used by courts to refer to conduct intended to cause harm to another.”
 

 This reference to the last word by way of text on the subjects of “wanton misconduct” and “mere, simple or ordinary negligence,” is made for the purpose"' of emphasizing our contention that “wanton misconduct” and “mere, simple or ordinary negligence” are' unrelated.
 

 The case of
 
 Hart
 
 v.
 
 Stence
 
 (Supreme Court of Iowa), 257 N. W., 434, 97 A. L. R., 535, announced November 20, 1934, fits the instant case like a glove. We quote the first and fourth paragraphs of the syllabus appearing in 97 A. L. R.:
 

 “1. One who, while driving at late dusk upon a straight, level highway at a speed in excess of forty miles per hour, collided with an unlighted truck parked
 
 *578
 
 partly on and partly off the pavement, which he failed to see until close to it in consequence of being momentarily blinded by the lights of a car coming from the other direction, must be regarded as guilty of contributory negligence as a matter of law where a statute provides that no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.”
 

 “4. The parking of an unlighted truck for a few minutes at late dusk at the side of a county highway which was straight and level for at least half a mile in both directions, with its right wheels about two feet off the pavement, the softness of the shoulder and the weight of the load making it undesirable to drive it further to the side, while negligence, is not recklessness.”
 

 So much of Section 12603, General Code, as is applicable to this case reads as follows:
 

 “No person shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.”
 

 This is a criminal statute. It has the quality of absolutism. It contains no exceptions. Exceptions can only be read into it by the rankest kind of judicial legislation. The amendment of this statute is a legislative function. It was enacted for the purpose of conducing to the public safety. Its violation constitutes negligence as a matter of law. See 97 A. L. R., 546.
 

 Let it be remembered that prior to the enactment of Section 12603, General Code, in its present form this court in the case of
 
 Tresise
 
 v.
 
 Ashdown, Admr.,
 
 118 Ohio St., 307, held that a charge to the jury to the effect that the operation of a motor vehicle at such a rate of speed that the driver could not stop within the distance that an obstruction could be seen by his
 
 *579
 
 own headlights constituted negligence
 
 per se,
 
 was erroneous.
 

 This pronouncement of the law was made in 1928, and in 1929 the General Assembly enacted into law the very rule that this court had denounced.
 

 This court has heretofore recognized the absolute character of this provision of Section 12603, General Code, in the cases of
 
 Skinner
 
 v.
 
 Penna. Rd. Co.,
 
 127 Ohio St., 69, and
 
 Gumley, Admr.,
 
 v.
 
 Cowman,
 
 129 Ohio St., 36.
 

 Authorities in support of this proposition of law are legion, as will abundantly appear, reference being had to Annotation, 97 A. L. Ñ., 546.
 

 The company had the defense of contributory negligence as a matter of law, but it was not available to it, if the jury found it to have been guilty of wanton misconduct, which the jury could not have found, admitting all facts alleged by Bassett to have been true.
 

 Of course there can be wilful or wanton misconduct resulting in injury and damage. Ohio has long recognized the distinction between “wanton misconduct” and “mere or ordinary negligence,” but has not announced it. This statement cannot be refuted so long as the laws of Ohio subject the party charged with wilful or wanton misconduct to punitive damages and deprive him of his plea of contributory negligence.
 

 While wanton misconduct and ordinary negligence are, as a matter of law, as far apart as the poles of the axis, under our liberal code pleading (Section 11306, General Code) they are joinable in one action, as they grow out of the same transaction; but they are just as repugnant and inconsistent as it is possible for two causes of action to be. The declaration on wanton misconduct is positive, and as a matter of law cuts off the defense of contributory negligence in behalf of the party sued and subjects him to an award for punitive in addition to compensatory damages, whereas the declaration on ordinary negligence is negative in nature,
 
 *580
 
 secures to the party sued his plea of contributory negligence and subjects him to compensatory damages only.
 

 The party sued must really defend two actions in one proceeding’. About all he can do is to deny generally the declaration on wanton misconduct, whereas on the declaration for ordinary negligence he can confess and avoid.
 

 That is not all. When wanton misconduct and ordinary negligence are joined, the trial court must charge the jury in effect that if they find that the acts or omissions of the party charged are wanton under the law as given by the court, then they must not entertain his plea of contributory negligence, as it is not available to him under the law. Likewise, if they find him to have been guilty of wanton misconduct, in addition to compensatory damages they shall award punitive damages in such sum as will operate as a punishment to the
 
 wrongdoer;
 
 but if the jury find that such acts and omissions were not wanton, then they will consider the plea of contributory negligence, and if from the greater weight of the evidence they find the complaining party is entitled to recover, they will allow him such sum as damages as will compensate him for his injuries — and no more.
 

 Let the charge of the trial court along this line be as clear as the sky, it is still confusing to the ordinary layman.
 

 A party is either guilty of wanton misconduct or he is not, and to permit a litigant to gamble with wanton misconduct until he sees he is going to lose, then fall back upon his action for ordinary negligence is subjecting the party sued to a hardship the law never intended.
 

 Such causes of action are highly inconsistent and repugnant, but permissible under the statute.
 

 Let us apply the law of wanton misconduct to the
 
 *581
 
 instant case. Dobbs was driving the truck for his company at the time of the collision. He was engaged in a legitimate business. He lost his way, stopped his truck on the proper side of a city street long enough to go across the street to make inquiry. He examined his rear lights at Milan, not many minutes before the collision, and they were then lighted. Of course he was charged with a knowledge of the weather conditions, and he was likewise charged with a knowledge of the lighting conditions of the street at the point in question.
 

 Admit for the purpose of illustration that Dobbs did all the things complained of under the conditions as alleged, was he conscious from his knowledge of surrounding circumstances and existing conditions that parking the truck as he did park it and leaving it as he did leave it would naturally or probably result in injury?
 

 Was Dobbs required under the surrounding circumstances and existing conditions to anticipate that Bassett, who was required under the law to keep his car under such control that he could stop it in the assured clear distance ahead, driving a motor vehicle provided with head-lights, would drive up the right side of a city street and collide with the rear end of his truck?
 

 If he was required to so anticipate, then he was guilty of wanton misconduct. If not, he could be charged with only ordinary negligence, at the most.
 

 There are no facts in this case to warrant the allegation of wanton misconduct in the pleading. There is no evidence in the case to warrant the charge of the court on the proposition of wanton misconduct. The injection of the element of wanton misconduct into the case constituted prejudicial error.
 

 
 *582
 
 The judgment of the Court of Appeals is reversed and final judgment entered for plaintiff in error.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias and Zimmerman, JJ., concur.
 

 Williams, J., concurs in the syllabus and in the judgment of reversal.
 

 Jones, J., concurs in the syllabus and in the judgment.