TALIK, APPELLEE, *v.* FEDERAL MARINE TERMINALS, INC., APPELLANT.

[Cite as *Talik v. Fed. Marine Terminals, Inc.,*
117 Ohio St.3d 496, 2008-Ohio-937.]

(No. 2006–1808–Submitted September 18, 2007–Decided March 13, 2008.)

LANZINGER, J.

{¶ 1} In this case, we are asked to determine whether the Longshore and Harbor Workers' Compensation Act ("LHWCA"), Section 901 et seq., Title 33, U.S.Code, preempts a claim under Ohio law alleging that the claimant's employer caused an injury through an intentional act committed with the belief that injury was "substantially certain" to occur. We hold that the federal law preempts a claim against an employer for intentional tort based upon substantial certainty.

## I. Case Background

{¶ 2} Appellee Joseph Talik worked as a longshoreman for appellant Federal Marine Terminal, Inc., at the port of Cleveland. On September 10, 2004, when Talik and a coworker were assigned to load pipe from Dock 26 onto trucks, Talik was injured by a collapsing stack of pipes that fell on his right leg.

{¶ 3} As a longshoreman, a maritime worker who worked on land adjoining navigable waters, Talik was covered by the LHWCA. As a worker in the "twilight zone," he had the option of obtaining benefits under the LHWCA or the

state workers' compensation act because his employer was required to pay into the state system, R.C. 4123.35, and to secure insurance pursuant to the LHWCA. Section 932(a), Title 33, U.S.Code. Talik received his benefits from the Ohio Bureau of Workers' Compensation.

{¶ 4} Talik also filed a common-law cause of action in the Cuyahoga County Court of Common Pleas, alleging that his employer had committed a "substantial certainty" intentional tort. Federal Marine filed a motion for summary judgment, arguing that Section 905(a), Title 33, U.S.Code preempted this claim. Federal Marine also relied on federal common law to argue that if its immunity was not complete, a showing of Federal Marine's deliberate, specific intent to injure Talik was required before it could be held liable. The trial court granted summary judgment to Federal Marine, and Talik appealed.

{¶ 5} On appeal, the Eighth District Court of Appeals reversed, reasoning that because the LHWCA is a typical workers' compensation program and because an injured employee in Ohio is not precluded from maintaining both a workers' compensation claim and an intentional-tort claim, Talik's intentional-tort claim was not preempted by the federal statute.[1] *Talik v. Fed. Marine Terminals*, 8th Dist. No. 87073, 172 Ohio App.3d 704, 2006-Ohio-3979, 876 N.E.2d 1246, ¶ 16. The court of appeals also determined that Ohio law governs because Talik did not sue Federal Marine under the LHWCA. Id. at ¶ 28.

{¶ 6} We accepted this discretionary appeal[2] to determine whether the LHWCA, by providing employer immunity from certain claims, preempts an employee's state common-law claim for an intentional tort based on substantial certainty.

{¶ 7} Our discussion will first examine the federal statute and then Ohio's intentional tort law before determining the preemption issue.

## II. The Longshore and Harbor Workers' Compensation Act

{¶ 8} The Longshore and Harbor Workers' Compensation Act, Section 901 et seq., Title 33, U.S.Code, entitles certain workers such as longshoremen injured in the course of their employment to compensation from their employer, regardless of whether the employer's negligence caused the injuries. Thus, the LHWCA is a typical workers' compensation act.

---

1. Talik argued in his second assignment of error that Federal Marine failed to raise the LHWCA as an affirmative defense. The Eighth District found this assignment of error to be moot and declined to address it.

2. Before oral argument, Talik filed a motion to strike portions of Federal Marine's reply brief. That motion is denied.

{¶ 9} The LHWCA was enacted by Congress in 1927 in response to decisions by the United States Supreme Court limiting the authority of the states to apply their workers' compensation laws to injured maritime employees. *Morrison–Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dept. of Labor* (1983), 461 U.S. 624, 640, 103 S.Ct. 2045, 76 L.Ed.2d 194 (Marshall, J., dissenting). The act originally provided compensation for injuries "occurring upon the navigable waters of the United States * * * if recovery * * * through workmen's compensation proceedings may not validly be provided by State law." Former Section 903, Title 33, U.S.Code, 44 Stat. 1426.

{¶ 10} Although it was clear that maritime workers who sustained injuries "upon the navigable waters" were within the LHWCA's exclusive jurisdiction, the same could not be said for maritime workers who were injured while working on land. Questions began to arise over jurisdiction and the exact point at which state remedies gave way to federal remedies. *Davis v. Dept. of Labor & Industries of Washington* (1942), 317 U.S. 249, 253–254, 63 S.Ct. 225, 87 L.Ed. 246. To protect longshoremen from the consequences of filing in the wrong jurisdiction, the United States Supreme Court held that those workers in the "twilight zone," i.e., "that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation," may file in either the federal court under the LHWCA or in the state court under the state workers' compensation laws. Id. at 252 and 258, 63 S.Ct. 225, 87 L.Ed. 246.

{¶ 11} Thirty years later, Congress amended the LHWCA to extend its coverage inland. The term "navigable waters of the United States" was broadened to include "any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." Section 903(a), Title 33, U.S.Code. Employers also agreed to more than double the maximum weekly benefits for permanent total disability in exchange for the elimination of seaworthiness warranty claims. See 9A Larson's Workers' Compensation Law (2007), Section 145.02[8][c].

{¶ 12} In analyzing these 1972 amendments, the Supreme Court reaffirmed that the LHWCA remained concurrent with state workers' compensation law. *Sun Ship, Inc. v. Pennsylvania* (1980), 447 U.S. 715, 719–720, 100 S.Ct. 2432, 65 L.Ed.2d 458. Accordingly, a longshoreman such as Talik, injured while working on land in a location that falls within the expanded 1972 definition of "navigable waters" is inside the "twilight zone" and may apply for benefits under a state workers' compensation scheme, the LHWCA, or both. However, "any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under [the LHWCA] pursuant to any other workers' compensation

law * * * shall be credited against any liability imposed by this chapter." Section 903(e), Title 33, U.S.Code.

{¶ 13} In this case, although Talik applied for and has already received benefits from Ohio's workers' compensation fund, he now seeks to recover common-law damages against Federal Marine for an intentional tort under Ohio law. A firm understanding of what constitutes an employer intentional tort is necessary to determine whether the LHWCA preempts such a claim.

### III. Ohio Claims Against Employers for Intentional Tort

{¶ 14} In *Payne v. Vance* (1921), 103 Ohio St. 59, 133 N.E. 85, this court held that an intentional or willful tort involved the element of intent or purpose. Id. at paragraph one of the syllabus. In so doing, the court distinguished an intentional tort, which requires a specific mental state, from negligence, whether slight, ordinary, or gross. Id. "Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury." *Universal Concrete Pipe Co. v. Bassett* (1936), 130 Ohio St. 567, 5 O.O. 214, 200 N.E. 843, paragraph two of the syllabus. By contrast, an intentional or willful tort involves an intent to injure. *Reserve Trucking Co. v. Fairchild* (1934), 128 Ohio St. 519, 191 N.E. 745, paragraph one of the syllabus.

{¶ 15} Not until almost 50 years later were claims for intentional torts against employers recognized as an exception to Ohio's workers' compensation exclusivity provision.[3] *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572. The *Blankenship* court reasoned that an employee's injury neither arises out of nor is received in the course of employment within the meaning of the Workers' Compensation Act if it is sustained as a result of an employer's intentional conduct.[4] Id. at 613, 23 O.O.3d

---

3. The current version of R.C. 4123.74, which is substantially similar to the version in effect at the time that *Blankenship* was decided, provides: "Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter."

4. Professor Larson has criticized the *Blankenship*-style exception to workers' compensation exclusivity provisions based on the theory that an intentional tort does not arise out of employment as "[t]he most fictitious theory of all * * * for if it is a work-connected assault, it is no less so because

504, 433 N.E.2d 572. The definition of "intentional tort" was expanded in *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, to mean "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." Id. at paragraph one of the syllabus. An employee was allowed to pursue a common-law claim for an intentional tort against an employer even though the employee had received workers' compensation benefits for the same injury. Id. at paragraph two of the syllabus.

{¶ 16} The standard of "substantial certainty" in the intentional-tort arena caused confusion. See *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 109, 522 N.E.2d 489; *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 116–117, 570 N.E.2d 1108 (*Jones* "created a confusing status of the law" and engendered "contradicting interpretations" of the intentional-tort standard). A three-part test was established for determining an employer's "intent" in an action by an employee asserting an intentional tort. The employee must demonstrate "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Fyffe*, 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

{¶ 17} The General Assembly modified the common-law definition of an employer intentional tort by enacting R.C. 2745.01, effective April 7, 2005.[5] The statute provides that in an action for intentional tort, an employee must prove that "the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." A belief that injury is substantially certain to occur exists when the employer "acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death." R.C. 2745.01(B). The new statute, therefore, rejects the notion that acting with a belief that injury is substantially certain to occur is analogous to wanton misconduct as defined in *Universal Concrete*, 130 Ohio St. 567, 5 O.O. 214, 200 N.E. 843, paragraph two of the syllabus. Because the accident in this case predated enactment of R.C. 2745.01, however, the *Fyffe* standard still applies.

---

the assailant happens to be the employer." 6 Larson's Workers' Compensation Law (2007) 103–4, Section 103.01.

5. An earlier version of R.C. 2745.01, enacted to supersede *Blankenship, Jones, Van Fossen,* and *Fyffe,* see Section 3, Am.H.B. No. 103, 146 Ohio Laws, Part I, 756, 758, was held to be unconstitutional. *Johnson v. BP Chems., Inc.* (1999), 85 Ohio St.3d 298, 707 N.E.2d 1107, syllabus.

{¶ 18} Federal Marine contends that regardless of Ohio's recognition of a claim for employer intentional tort as an exception to Ohio's workers' compensation system, the LHWCA, as a federal law, preempts the state's intentional-tort claim.

## IV. Preemption

{¶ 19} The federal law issue before this court is whether Ohio's common-law tort based on substantial certainty is expressly preempted by the exclusivity provision of the LHWCA, conflicts with the LHWCA scheme of compensation, or stands as an obstacle to the purposes of the LHWCA to provide uniform compensation to longshore workers.

### A. Standard

{¶ 20} We most recently considered the issue of federal preemption in a Federal Employers' Liability Act case. *Norfolk S. Ry. Co. v. Bogle*, 115 Ohio St.3d 455, 2007-Ohio-5248, 875 N.E.2d 919. There we acknowledged, "The Supremacy Clause of the United States Constitution provides that 'the Laws of the United States * * * shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' Clause 2, Article VI, United States Constitution. The clause grants Congress the power to preempt state laws. See *Jenkins v. James B. Day & Co.* (1994), 69 Ohio St.3d 541, 544, 634 N.E.2d 998, citing *In re Miamisburg Train Derailment Litigation* (1994), 68 Ohio St.3d 255, 259, 626 N.E.2d 85." *Norfolk S. Ry. Co.*, at ¶ 6.

{¶ 21} Preemption can occur in any one of three ways: by express preemption, by preemption of the field, and by preemption due to conflict. Id. at ¶ 7. Express preemption occurs when Congress declares outright that an enactment preempts state law. *Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 95–98, 103 S.Ct. 2890, 77 L.Ed.2d 490. When Congress has made its intent known through explicit statutory language, the court's task is an easy one, for preemption fundamentally is a question of congressional intent. *English v. Gen. Elec. Co.* (1990), 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65.

{¶ 22} In the absence of explicit statutory language, Congress preempts the field to the exclusion of state law when it enacts a " 'scheme of federal regulation * * * so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.' " (Ellipsis and brackets sic.) *English*, 496 U.S. at 79, 110 S.Ct. 2270, 110 L.Ed.2d 65, quoting *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447. The United States Supreme Court has emphasized that " '[w]here * * * the field which Congress is said to have pre-empted' includes areas that

have 'been traditionally occupied by the States,' congressional intent to supersede state laws must be ' "clear and manifest." ' " (Ellipsis sic.) *English*, 496 U.S. at 79, 110 S.Ct. 2270, 110 L.Ed.2d 65, quoting *Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604, quoting *Rice*, 331 U.S. at 230, 67 S.Ct. 1146, 91 L.Ed. 1447.

{¶ 23} Finally, preemption of state law occurs when the state law actually conflicts with federal law. Preemption due to conflict exists when compliance with both state and federal requirements is impossible, see, e. g., *Florida Lime & Avocado Growers, Inc. v. Paul* (1963), 373 U.S. 132, 142–143, 83 S.Ct. 1210, 10 L.Ed.2d 248, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581. See *English*, 496 U.S. at 79, 110 S.Ct. 2270, 110 L.Ed.2d 65. The United States Supreme Court has expressed a reluctance to infer preemption in ambiguous cases "in light of the presumption against the pre-emption of state police power regulations." *Cipollone v. Liggett Group, Inc.* (1992), 505 U.S. 504, 518, 112 S.Ct. 2608, 120 L.Ed.2d 407.

{¶ 24} Federal Marine argues that Talik's claim is expressly preempted or, in the alternative, is preempted as impeding Congress's goals within the LHWCA. We will now examine whether either of those two methods of preemption applies.

## B. Express Preemption

{¶ 25} Federal Marine contends that the LHWCA expressly preempts Talik's common-law claim. "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood* (1993), 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387.

{¶ 26} The exclusivity clause within the LHWCA that Federal Marine relies upon, Section 905(a), Title 33, U.S.Code, provides: "The liability of an employer prescribed in [Section 904, Title 33, U.S.Code] shall be exclusive and in place of all other liability of such employer to the employee * * * entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee * * * may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death."

{¶ 27} In other words, for "such injury" suffered by longshoremen, employer liability is limited to the damages recoverable under the LHWCA. Talik argues that because the LHWCA fails to include an injury caused by employer intentional conduct within the ambit of "such injury" in Section 905(a), there can be no finding of express preemption.

{¶ 28} The LHWCA defines "injury" in Section 902(2), Title 33, U.S.Code as "accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment." Although the federal statute covers an intentional tort by third parties against an employee, the definition does not include an intentional tort by an employer.

{¶ 29} Thus, courts have held that because Congress did not explicitly include an employer intentional tort in the exclusive-remedy provision of Section 905(a), an employee may pursue an intentional-tort action against the employer. See *Taylor v. Transocean Terminal Operators, Inc.* (La.App.2001), 785 So.2d 860; *Austin v. Johns–Manville Sales Co.* (D.Me.1981), 508 F.Supp. 313, 316. We therefore cannot say that Congress has expressly preempted the intentional tort standard that Ohio uses.

## C. Conflict Preemption

{¶ 30} The Eighth Appellate District determined that because a claim for intentional tort is not specifically mentioned as a possible claim within the LHWCA, the claim is not preempted by the LHWCA; however, the court's approach is incomplete. Although Talik's claim for a substantial-certainty intentional tort is not expressly preempted by the LHWCA, it may still be preempted if it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. State legislation is declared to be invalid only when it "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." *S. Pacific Co. v. Jensen* (1917), 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086.

{¶ 31} Talik urges that we should look only to Ohio law to determine whether a substantial-certainty tort is excluded from the scope of the LHWCA. However, in determining the scope of the federal statute, we must apply federal law. See *Gravatt v. New York City* (C.A.2, 2000), 226 F.3d 108, 118 ("the 905(b) action [under the LHWCA] was to be developed as a matter of uniform federal maritime law, not by incorporating the tort law of the particular state in which the action arose").

{¶ 32} Ohio is one of only eight states[6] that have judicially adopted a "substantial certainty" standard for employer intentional torts. 6 Larson's

---

6. The other states are Connecticut, Florida, Louisiana, New Jersey, North Carolina, South Dakota, and Texas. 6 Larson's Workers' Compensation Law, supra, at 103–10, Section 103.04[1], fn. 1.

Workers' Compensation Law, supra, at 103–10, Section 103.04[1]. Most courts that have found an intentional-tort exception to the LHWCA's exclusivity provision, however, limit that exception to "specific intent" employer intentional torts. See *Houston v. Bechtel Assoc. Professional Corp., D.C.* (D.D.C.1981), 522 F.Supp. 1094, 1096 ("Nothing short of a specific intent to injure the employee falls outside the scope of § 905(a). Absent such specific intent, the employee is foreclosed from maintaining a tort action against his employer"); *Roy v. Bethlehem Steel Corp.* (E.D.Tex.1993), 838 F.Supp. 312, 316 (evidence that the conditions of the shipyards were so dangerous that the employer must have been "substantially certain" that injuries or fatalities would occur was not sufficient to establish a specific intent by the employer to injure the employee); *Austin*, 508 F.Supp. at 316, quoting 2A Larson, Workmen's Compensation Law (1976) 13–5, Section 68.13 ("the overwhelming weight of authority is that 'the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury' "). Thus it appears that an "accidental injury," as defined by Section 902(2), Title 33, U.S.Code and covered by the LWHCA, includes an injury sustained as a result of the employer's negligence, gross negligence, recklessness, or wanton conduct. Only a specific, deliberate intent by the employer to injure an employee falls outside the provisions of the LWHCA.

{¶ 33} The United States Supreme Court has warned that the LHWCA is "not a simple remedial statute intended for the benefit of the workers. Rather, it was designed to strike a balance between the concerns of the longshoremen and harbor workers on the one hand, and their employers on the other. Employers relinquished their defenses to tort actions in exchange for limited and predictable liability. Employees accept the limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail." *Morrison–Knudsen*, 461 U.S. at 635–636, 103 S.Ct. 2045, 76 L.Ed.2d 194.

{¶ 34} Compensation benefits secured by the employer constitute the exclusive employee remedy "in place of all other liability" of the employer "at law or in admiralty." Section 905(a), Title 33, U.S.Code. The legislative history of the 1972 amendments also reveals that "Congress intended that compensation, not tort damages, [was] to be the primary source of relief for workplace injuries for longshoremen against their employers." *Peter v. Hess Oil Virgin Islands Corp.* (C.A.3, 1990), 903 F.2d 935, 952. We would upset the balance achieved by the LHWCA if we stretched the language of the federal statute to permit an exception from its exclusive coverage for "substantial certainty" intentional torts.

{¶ 35} Furthermore, applying Ohio's standard for employer intentional torts would be inconsistent with the central purpose underlying the LHWCA to create

" 'a uniform compensation system.' " *Dir., Office of Workers' Comp. Programs, U.S. Dept. of Labor v. Perini N. River Assoc.* (1983), 459 U.S. 297, 318, 103 S.Ct. 634, 74 L.Ed.2d 465, fn. 26, quoting 1972 Senate Report No. 92–1125 at 13. See also *Hill v. Knapp* (2007), 396 Md. 700, 716–717, 914 A.2d 1193. We would create an inequitable situation if we permitted land-based maritime workers to maintain claims for "substantial certainty" intentional torts while the same maritime workers injured in another jurisdiction or upon the navigable waters would be limited to "specific intent" claims for intentional tort.

{¶ 36} Therefore, we hold that the Longshore and Harbor Workers' Compensation Act, Section 901 et seq., Title 33, U.S.Code, preempts a claim under Ohio law alleging that the claimant's employer caused an injury through an intentional act committed with the belief that injury was "substantially certain" to occur.

## V.   Conclusion

{¶ 37} Because a claim for "substantial certainty" intentional tort acts as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the LHWCA, such a claim is preempted by Section 905(a), Title 33, U.S.Code. The judgment of the Cuyahoga County Court of Appeals is reversed, and the cause is remanded for consideration of Talik's second assignment of error.

Judgment reversed
and cause remanded.

MOYER, C.J., and LUNDBERG STRATTON, O'DONNELL, and CUPP, JJ., concur.

PFEIFER and VUKOVICH, JJ., concur in part and dissent in part.

JOSEPH J. VUKOVICH, J., of the Seventh Appellate District, sitting for O'CONNOR, J.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 38} The issue in this case is whether the Longshore and Harbor Workers' Compensation Act ("LHWCA"), Section 901 et seq., Title 33, U.S.Code, preempts a claim for intentional tort against an employer under Ohio law. The majority opinion concludes that intentional-tort claims may be brought against an employer because the LHWCA does not preempt all intentional torts. I concur with this conclusion.

{¶ 39} The majority opinion further concludes that because Ohio applies a "substantial certainty" standard to intentional torts against an employer, and not one of specific, deliberate intent, injured longshoremen may not pursue an intentional-tort claim in Ohio against their employers. The majority reaches this

conclusion because applying a different standard in Ohio than in other states "would be inconsistent with the central purpose underlying the LHWCA to create ' "a uniform compensation system." ' " Majority opinion at ¶ 35, quoting *Dir., Office of Workers' Comp. Programs, U.S. Dept. of Labor v. Perini N. River Assoc.* (1983), 459 U.S. 297, 318, 103 S.Ct. 634, 74 L.Ed.2d 465, fn. 26, quoting 1972 Senate Report No. 92–1125 at 13. But this central purpose is already undermined by the federal law itself, because as the majority opinion states, certain injured workers "may apply for benefits under a state workers' compensation scheme, the LHWCA, or both." Majority opinion at ¶ 12.

{¶ 40} Each of the 50 states has enacted its own unique state workers' compensation system, any one of which can be used to determine liability for an injury pursuant to the LHWCA. Accordingly, it will not offend the LHWCA if a substantial-certainty intentional-tort standard, which according to the majority opinion, at ¶ 32, has been adopted by at least seven other states, is used in Ohio to determine whether an employer committed an intentional tort. I would hold that the LHWCA does not preempt a claim for an employer intentional tort in Ohio.

VUKOVICH, J., concurs in the foregoing opinion.

––––––––––

McDonald Hopkins, L.L.C., Jerome W. Cook, Glenn D. Southworth, Matthew M. Nee, and Elizabeth A. Wambsgans, for appellee.

Tucker, Ellis & West, L.L.P., Irene C. Keyse–Walker, and Jeffrey A. Healy, for appellant.