[Cite as *Lackey v. Noble*, 2012-Ohio-2554.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

MORNAN LACKEY, ADMINISTRATOR, et al.

   Appellee

   v.

MISTY NOBLE, LPN

   Appellant

C.A. No.   11CA0082-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.  10CIV0540

DECISION AND JOURNAL ENTRY

Dated: June 11, 2012

DICKINSON, Judge.

INTRODUCTION

**{¶1}** Cassandra Lackey, a mentally-disabled adult, choked to death while eating in the cafeteria of the Medina County Board of Developmental Disabilities Achievement Center. Although Ms. Lackey was supposed to be on a mechanical soft diet, that fact was never communicated to cafeteria staff. Ms. Lackey's estate sued Misty Noble, Ms. Lackey's case manager, for negligence and wanton and reckless misconduct. Ms. Noble moved for summary judgment, arguing that she is immune from liability under Section 2744.03(A)(6) of the Ohio Revised Code. The trial court denied her motion. Ms. Noble has appealed, assigning as error that the trial court incorrectly denied her motion for summary judgment. We affirm in part because the trial court correctly concluded that, viewing the evidence in a light most favorable to the estate, there is a genuine issue of material fact regarding whether Ms. Noble's conduct was

wanton or reckless. We reverse in part because she is immune from liability on the estate's negligence claims.

## BACKGROUND

{¶2} The Medina County Achievement Center is a workshop and learning center for individuals with developmental disabilities. Ms. Lackey attended the center for a number of years, until she had to move to a nursing home in 2007. After about a year, she was able to resume attending the Achievement Center, even though she continued to reside at the nursing home.

{¶3} Ms. Noble is a licensed practical nurse. At the time Ms. Lackey resumed attending the Achievement Center, Ms. Noble had worked for the center for approximately ten years. Ms. Noble was the case manager for more than 100 of the Center's clients. Although she was responsible for more clients than any of the other case managers, her clients tended to have fewer medical issues than the other case managers' clients. Ms. Noble was Ms. Lackey's case manager both before Ms. Lackey moved to the nursing home and after she resumed attending the Achievement Center in April 2008.

{¶4} According to Ms. Lackey's estate, on April 23, 2008, the nursing home faxed a copy of Ms. Lackey's physician's orders to the Achievement Center. Those orders indicated that she was on a mechanical soft diet. On May 13, 2008, the nursing home faxed another set of physician's orders to the Achievement Center that also indicated that she was on a mechanical soft diet. The May 13 materials included a copy of Ms. Lackey's rehabilitation dining plan, which further indicated that she was to receive a mechanical soft diet because she eats at a "rapid and impulsive rate . . . which increases her risk of choking with solid foods."

{¶5}   After Ms. Lackey's death, the Achievement Center discovered that it had copies of the documents that the nursing home had faxed to it.  In the corner of one page of the physician's orders, someone had written "Cassandra Lackey" in ink and in the corner of another page someone had written "Candy Lackey" in ink.  At her deposition, Ms. Noble testified that she could not remember whether she had seen the physician's orders.  She said, however, that it would have been her practice to forward such information to dietary personnel so that her clients would receive appropriate meals.  She also testified that she did not think that she was the person who wrote on the documents.  Although the handwriting on the documents resembled her own, she said that it also resembled the handwriting of her former supervisor.  She also testified that, if she had written the notes, she would not have abbreviated Ms. Lackey's first name.  She further testified that she did not think that the writing was hers because she always used a blue- or black-ink pen and the writing appeared to be teal.  She claimed that her former supervisor was known to have used pens of many different colors.

POLITICAL SUBDIVISION EMPLOYEE IMMUNITY

{¶6}   At the time of Ms. Lackey's death, Ms. Noble was an employee of the Medina County Board of Developmental Disabilities.  The parties agree that the Board is a political subdivision under Section 2744.01(F) of the Ohio Revised Code.  Under Section 2744.03(A)(6), a political subdivision employee "is immune from liability unless . . . (a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code."  In its second amended complaint, the estate alleged that Ms. Noble, "negligently and in a wanton and reckless manner, . . . failed to properly

care for [Ms. Lackey] . . . in numerous aspects, including, but not limited to, failing to document [Ms.] Lackey's soft mechanical diet . . . failing to implement the medical order that Ms. Lackey be on a mechanical soft diet [and] failing to notify the cafeteria staff and dietary personnel that Ms. Lackey was to be on a mechanical soft diet . . . ."

## WANTON OR RECKLESS

{¶7}    The definition of "wanton" has had a tortuous history.  Early on, the word was used to modify the term negligence.  *See Higbee Co. v. Jackson*, 101 Ohio St. 75, paragraph three of the syllabus (1920) (providing definition of "wanton negligence"), partially overruled on other grounds by *Union Gas & Elec. Co. v. Crouch*, 123 Ohio St. 81 (1930).  In *Universal Concrete Pipe Company v. Bassett*, 130 Ohio St. 567 (1936), however, the Ohio Supreme Court explained that "there is no such thing as wanton negligence." *Id*. at 574.  Rather, "wanton misconduct and ordinary negligence are, as a matter of law, as far apart as the poles of the axis . . . [and] are just as repugnant and inconsistent as it is possible for two causes of action to be." *Id*. at 579.  "The declaration on wanton misconduct is positive, and as a matter of law cuts off the defense of contributory negligence in behalf of the party sued and subjects him to an award for punitive in addition to compensatory damages, whereas the declaration on ordinary negligence is negative in nature, secures to the party sued his plea of contributory negligence, and subjects him to compensatory damages only." *Id*. at 579-80.  The Supreme Court, equating wantonness with "cussedness," proceeded to define wanton misconduct as "such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury." *Id*. at 573, paragraph two of the syllabus.

**{¶8}** After *Bassett*, the Ohio Supreme Court "announced many decisions in which wanton misconduct [was] discussed in conjunction with the phrase 'disposition to perversity.'" *Hawkins v. Ivy*, 50 Ohio St. 2d 114, 117 (1977). In *Hawkins*, however, the Supreme Court determined that "further reliance upon that phrase to be unnecessary to a workable definition of wanton misconduct." *Id*. Clarifying the definition, it held that, if someone "fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under such circumstances in which there is great probability that harm will result, such failure constitutes wanton misconduct." *Id*. at syllabus.

**{¶9}** In *Fabrey v. McDonald Village Police Department*, 70 Ohio St. 3d 351 (1994), the Ohio Supreme Court muddied the definition of wanton it had provided in *Hawkins*. Although it noted that it had held in *Hawkins* that "wanton misconduct was the failure to exercise any care whatsoever," it also quoted a pre-*Hawkins* decision in which it had written that "'mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury." *Id*. at 356 (quoting *Roszman v. Sammett*, 26 Ohio St. 2d 94, 97 (1971)). It repeated that same language in *McGuire v. Lovell*, 85 Ohio St. 3d 1216, 1219 (1999), and cited exclusively to the definition of wanton misconduct provided in *Bassett*, instead of the definition provided in *Hawkins*, in *Talik v. Federal Marine Terminals Inc.*, 117 Ohio St. 3d 496, 2008-Ohio-937, ¶ 14. Despite that, it applied the *Hawkins* definition of wanton misconduct in *Zivich v. Mentor Soccer Club Inc.*, 82 Ohio St. 3d 367, 375 (1998) and *Gladon v. Greater Cleveland Regional Transit Authority*, 75 Ohio St. 3d 312, 319 (1996), which were both decided after *Fabrey*.

{¶10} Further clouding the standard that applies under Section 2744.03(A)(6) of the Ohio Revised Code is the fact that, even though the statute provides that a political subdivision employee is liable for "wanton" or "reckless" acts or omissions, the Ohio Supreme Court has determined that those terms mean the same thing. *McGuire v. Lovell*, 85 Ohio St. 3d 1216, 1219 (1999) ("In the context of immunity, reckless conduct has been viewed as interchangeable with wanton conduct."). In *O'Toole v. Denihan*, 118 Ohio St. 3d 374, 2008-Ohio-2574, the Supreme Court, defining reckless conduct, wrote that, "an actor's conduct 'is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.'" *Id*. at ¶ 73 (quoting *Thompson v. McNeill*, 53 Ohio St. 3d 102, 104-05 (1990)). It also wrote that, "[d]istilled to its essence, . . . recklessness is a perverse disregard of a known risk." *Id*. It further wrote that "the actor must be conscious that his conduct will in all probability result in injury." *Id*. at ¶ 74 (quoting *Fabrey v. McDonald Village Police Department*, 70 Ohio St. 3d 351, 356 (1994)); *Rankin v. Cuyahoga County Dep't of Children and Family Servs.*, 118 Ohio St. 3d 392, 2008-Ohio-2567, ¶ 37 (quoting *Fabrey*, 70 Ohio St. 3d at 356).

{¶11} The Supreme Court has never rejected the definition of wanton misconduct that it provided in *Hawkins v. Ivy*, 50 Ohio St. 2d 114, 117-18 (1977). In fact, it cited that definition with approval in *Fabrey*, the case in which it reintroduced the "disposition to perversity" language that *Hawkins* had set aside. *Fabrey v. McDonald Village Police Dep't*, 70 Ohio St. 3d 351, 356 (1994). After consideration, the *Hawkins* definition is the appropriate standard for wantonness. Under that standard, Ms. Noble's acts or omission may be found wanton if she

"fail[ed] to exercise any care whatsoever toward those to whom [she] owe[d] a duty of care, and [her] failure occur[red] under such circumstances in which there [was] great probability that harm [would] result . . . ." *Hawkins*, 50 Ohio St. 2d 114, at syllabus.

{¶12} Ms. Noble has argued that, even if she saw the documents that the nursing home faxed to the Achievement Center and failed to direct them to the appropriate people, her omissions rose, at most, to the level of negligence. She has argued that there is no evidence that she consciously decided to ignore the diet instructions or consciously refused to relay the physician's orders to others. In support of her argument, she has claimed that, when Ms. Lackey returned to the Achievement Center, she called Ms. Lackey's nursing home and learned from its staff that Ms. Lackey was on a regular diet. She has also noted that she was only at work for half the day on the day that the nursing home faxed the first set of physician's orders to the Achievement Center.

{¶13} The fact that the faxes that the Achievement Center received contain handwritten notes in ink indicates that someone at the Center handled them. The estate submitted the affidavit of a forensic document examiner who claimed that she had compared the writing on the faxes to Ms. Noble's handwriting and determined that there were "significant similarities." The examiner also said that she was "virtually certain" that the writing on the faxes was Ms. Noble's.

{¶14} Ms. Noble admitted that, if she had seen the physician's orders, it would have been her duty to pass Ms. Lackey's dietary restrictions to the appropriate personnel. It is undisputed that the Center's dietary and cafeteria staff never received the physician's instructions. In addition, it cannot reasonably be argued that giving a regular diet to someone who requires a mechanical soft diet because she is at an increased risk of choking are not "circumstances in which there is great probability that harm will result." *Hawkins v. Ivy*, 50

Ohio St. 2d 114, syllabus (1977). Accordingly, viewing the evidence in a light most favorable to the estate, there is a genuine issue of material fact regarding whether Ms. Noble failed to exercise any care toward Ms. Lackey under circumstances in which there was great probability that harm would result to Ms. Lackey.

{¶15} Even if Ms. Noble had to know that her omissions would create an "unreasonable risk of physical harm" to Ms. Lackey and that the risk was "substantially greater than that which is necessary to make [her] conduct negligent" in order for that conduct to be wanton misconduct, such facts can be inferred from Ms. Lackey's rehabilitation dining plan, which the nursing home faxed to the Achievement Center at the same time it faxed the second set of physician's orders. *O'Toole v. Denihan*, 118 Ohio St. 3d 374, 2008-Ohio-2574, ¶ 73. The dining plan indicated that Ms. Lackey had to be on a mechanical soft diet because she eats at a "rapid and impulsive rate . . . which increases her risk of choking with solid foods" and dispelled any ignorance Ms. Noble might have been able to claim about the risk of harm of keeping Ms. Lackey on a regular diet.

{¶16} The trial court correctly denied Ms. Noble's motion for summary judgment to the extent that the estate alleged that her conduct was wanton and reckless. The court, however, failed to separately analyze the estate's claims that Ms. Noble's conduct was negligent. Under Section 2744.03(A)(6), political subdivision employees are generally immune from negligence claims. *See Lindsey v. Summit County Children Servs. Bd.*, 9th Dist. No. 24352, 2009-Ohio-2457, at ¶ 14. Accordingly, the court should have granted Ms. Noble's motion for summary judgment on the estate's ordinary negligence claims. Ms. Noble's assignment of error is sustained in part and overruled in part.

CONCLUSION

**{¶17}** The trial court correctly denied summary judgment to Ms. Noble on the estate's wanton and reckless claims because a genuine issue of material fact exists regarding whether her conduct rose to that level. The court incorrectly denied summary judgment to Ms. Noble on the estate's negligence claims. The judgment of the Medina County Common Pleas Court is affirmed in part and reversed in part, and this matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

{¶18}  Although I agree with the outcome the lead opinion reaches in this matter, I do not join in the analysis employed to reach that outcome.  Consequently, I concur in judgment only.

{¶19}  Apart from their respective discussions of perversity, I fail to see any meaningful distinction between the "wanton" definitions in *Hawkins v. Ivy*, 50 Ohio St.2d 114 (1977), and *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351 (1994).  Both classify "wanton" as a high standard and a failure to exercise "any care whatsoever."  *Fabrey* at 356; *Hawkins* at syllabus.  Both shy away from any classification of "wanton" as mere or simple negligence. *Fabrey* at 356; *Hawkins* at 116.  Both weave the concept of recklessness directly into the definition of "wanton" behavior.  *Fabrey* at 356, quoting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); *Hawkins* at 116 ("With full knowledge of the surrounding circumstances, [defendant's] *reckless* and inexcusable disregard of the rights of other motorists * * * would support a finding of wanton misconduct.") (Emphasis added.)  Finally, both discuss "wanton" conduct in terms of the probability of a resultant injury.  *Fabrey* at 356; *Hawkins* at syllabus.  The similarities between the two opinions are great in number.

{¶20}  The difference highlighted by the lead opinion is that *Fabrey* discussed "perversity" in its analysis while *Hawkins* considered the discussion "unnecessary."  *Fabrey* at 356; *Hawkins* at 117.  It is curious that the Court deemed a perversity discussion unnecessary as it then went on to hold that wanton misconduct amounts to an actor's failure to exercise "any care whatsoever toward those to whom he owes a duty of care * * * under circumstances in which there is great probability that harm will result * * *."  *Hawkins* at syllabus.  Perversity is

really nothing more than acting or failing to act with conscious knowledge that, under the circumstances, an actor's conduct "will, in all common probability, result in injury." *Roszman v. Sammett*, 26 Ohio St.2d 94, 97 (1971). I do not find the difference between the probabilities espoused in the definitions of "wanton misconduct" and "perversity" to have any significance in practical application.

{¶21} In any event, *Fabrey* must control this Court's analysis. The Supreme Court clearly was aware of *Hawkins'* continued vitality as it quoted the opinion in *Fabrey*. *Fabrey* constitutes the Court's more recent pronouncement on the meaning of the term "wanton." *See also Rankin v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, ¶ 37 (*Fabrey* applied). Moreover, unlike *Hawkins*, *Fabrey* actually discussed wantonness in the context of the sovereign immunity statute, the statute at issue in this case. This Court also has applied the test from *Fabrey* in numerous instances. *See, e.g., Moss v. Lorain Cty. Bd. of Mental Retardation*, 185 Ohio App.3d 395, 2009-Ohio-6931, ¶ 19 (9th Dist.). I see no reason to depart from that approach.

{¶22} I agree that, under the circumstances here, a genuine issue of material fact remains as to whether Noble engaged in wanton misconduct. *See Fabrey* at 356. The trial court correctly denied Noble's motion for summary judgment on the estate's wanton and reckless claim. I further agree that the trial court should have granted Noble's motion for summary judgment on the estate's ordinary negligence claims. Therefore, I concur in the lead opinion's decision to affirm in part, reverse in part, and remand this case for further proceedings.

MOORE, J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

{¶23} I concur in the judgment of the majority to affirm the trial court's decision to deny Ms. Noble's motion for summary judgment with respect to the claims of wantonness and

recklessness, and to reverse any decision to deny immunity with respect to negligence claims. I do not join in the rest of the opinion.

APPEARANCES:

KENNETH A. CALDERONE and MICHAEL OCKERMAN, Attorneys at Law, for Appellant.

GARY W. KISLING, Attorney at Law, for Appellee.